In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3320

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RONALD RITZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:07-cv-01167—**William T. Lawrence**, *Judge.*

ARGUED APRIL 15, 2013—DECIDED JULY 3, 2013

Before RIPPLE, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Almost fifteen years ago, the Environmental Protection Agency warned the owners of Cottonwood Campground to start testing its water supply for contaminates or face the consequences. The owners did not comply, and so the United States filed a complaint for violations of the Safe Drinking Water Act, 42 U.S.C. §§ 300g-3(b), (g) ("SDWA"). After concluding that the campground operated as a "public water system"

subject to the SDWA and its implementing regulations, the district court granted summary judgment in favor of the government. Defendant Ronald Ritz, the owner of the campground, has appealed, asserting that the property does not constitute a public water system so the SDWA does not apply. The problem for Ritz is that he waived all of the new arguments he now raises for the first time on appeal by failing to present them to the district court, so we must dismiss his appeal in its entirety.

## I. BACKGROUND

In the 1980s, the Ritz family purchased a campground site in Cedar Grove, Indiana, called Cottonwood (or alternatively known as, Whitewater River Cottonwood Campground). Thomas Ritz ran the campground for some time before selling it to his brother, Ronald. The campground area—which operates on a seasonal basis from May to October—is made up of approximately fifty to eighty individual lots or "campsites." Each campsite has a water spigot and sewer hookup for recreational vehicles. The property also contains two restrooms with working toilets, sinks, and showers.

In December 1998, the Environmental Protection Agency ("EPA") issued an Administrative Order to Cottonwood Campground pursuant to the Safe Drinking

Water Act, 42 U.S.C. §§ 300g-3(b), (g) ("SDWA").[1] The SDWA and corresponding EPA regulations specifically focus on public water systems and require owners of public water systems to comply with sampling, monitoring, and reporting requirements for various substances. In this case, the EPA's order found that Cottonwood operated as a public water system, and so it required the campground to sample its water system for nitrate, nitrite, and coliform (e. coli) bacteria, and to notify any individuals who use the property of its past failure to monitor the water system. It is undisputed that the Ritz family essentially failed to comply with the requirements of the order by testing the water system, at best, only sporadically over the next several years. As a result, the United States filed a complaint on behalf of the EPA against the Ritz brothers and Cottonwood for violations of the SDWA. The Ritz brothers consistently denied that the water system in question constituted a public water system as contemplated by the SDWA because the water spigots in the campground are marked as "Non-Potable," so users would know the water is not provided for human consumption.

After the parties filed cross-motions for summary judgment, the district court held a settlement conference in May 2009. The parties tentatively agreed to a "Preliminary Agreement," yet were ultimately unable to agree to the terms of a proposed consent decree requiring

---

[1] The order was initially served on Thomas Ritz because he was still listed as the owner of record of the campground.

water testing for three years, and the district court eventually granted summary judgment for the United States after briefing was completed. The court concluded that the campground qualified as a public water system under the SDWA and the campground had failed to conduct the requisite water sampling, monitoring, and reporting to consumers.

But in the fall of 2010, the district court discovered that Thomas Ritz had not been receiving communications related to the case, so the court set aside the summary judgment ruling as against Thomas and he was granted an opportunity to file a response to the government's motion for summary judgment. Thomas filed a response, along with a motion to enforce the parties' defunct Preliminary Agreement, but Ronald did not join Thomas' response or motion. The district court denied Thomas' motion to enforce the Preliminary Agreement (since it was contingent on the entry of a consent decree that never happened), and again granted summary judgment for the United States on the SDWA violations. Thomas was later dismissed from the case, but the district court issued an order enjoining Ronald from any current and future violations of the SDWA, and awarded a $29,754 civil penalty against Ronald. This appeal followed.

## II. ANALYSIS

The SDWA defines "public water system" as "a system for the provision to the public of water for human consumption through pipes or other constructed con-

veyances, if such system has at least fifteen service con-
nections or regularly serves at least twenty-five individu-
als." 42 U.S.C. § 300f(4)(A). The relevant EPA regulation
largely tracks the statutory definition of public water
system, meaning a "system [that] has at least fifteen
service connections or regularly serves an average of
at least twenty-five individuals daily at least 60 days out
of the year." 40 C.F.R. § 141.2. In the initial stages of
this litigation, the Ritz family maintained that they did
not need to comply with such regulatory requirements
because their campground does not serve the minimum
number of persons. More specifically, Ronald's primary
argument for summary judgment below was that the
campground did not serve at least twenty-five individuals
daily for at least sixty days of the year.

Now for the first time on appeal he advances a new
theory: the campground does not have fifteen service
connections. According to Ronald, each of the fifty or
more campsites on the property has its own spigot, but
these spigots are not service connections. Ronald argues
by analogy that the campground is like a single-family
home that may have many faucets, but is still not consid-
ered a public water system for purposes of the SDWA.
The merits of Ritz's new argument raise an interesting
question, but we need not consider it because this line
of argument was never developed below. As we have
cautioned time and again, "it is a well-settled rule that
a party opposing a summary judgment motion must
inform the trial judge of the reasons, legal or factual,
why summary judgment should not be entered. If it does
not do so, and loses the motion, it cannot raise such

reasons on appeal.*" Domka v. Portage County*, 523 F.3d 776, 783 (7th Cir. 2008) (internal quotations and citations omitted); *see also Fednav Int'l Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010); *Pole v. Randolph*, 570 F.3d 922, 937 (7th Cir. 2009). Because the specific theory Ronald now urges was never actually presented to the district court, we find it waived for purposes of this appeal.

Ronald contends that his argument on appeal is not waived because he argued in his motion for summary judgment that the campground did not contain the requisite number of service connections to trigger the SDWA. But a review of the record reveals otherwise. We can find only a passing, one sentence line asserting that "the area in question does not currently and has never had at least fifteen service connections *in use at least sixty days out of the year*." Def.'s Joint Mot. for Summ. J. at 4 (emphasis added). This argument may seem related, but is a different argument than the one he asserts on appeal. That earlier argument focuses on the usage of the service connections whereas in the briefing before this court, Ronald specifically argues that the campground does not have fifteen service connections, period. And the fact that the court was faced with the overarching issue of the SDWA's applicability to the campground is not helpful to Ronald. *See Domka*, 523 F.3d at 783; *Fednav Int'l Ltd.*, 624 F.3d at 841 ("[A] party has waived the ability to make a specific argument for the first time on appeal when the party failed to present that specific argument to the district court, even though the issue may have been before the district court in more general terms.") (citation omitted); *Libertyville Datsun Sales, Inc. v.*

*Nissan Motor Corp.*, 776 F.2d 735, 737 (7th Cir. 1985) (collecting cases). Ronald has changed his theory after losing below and that prevents us from considering it.

Ritz also advances several additional arguments that he never raised below. He suggests that the government's enforcement action was barred for statute of limitations reasons, he never had an opportunity for notice and hearing for the alleged SDWA violations, and the district court should have enforced the parties' Preliminary Agreement. Each of these arguments was raised by Ronald's brother, Thomas, in his separate response to the government's motion for summary judgment (and rejected by the district court), but Ronald never once sought to join that response or assert any such arguments on his own. Therefore, we must conclude that these arguments are waived for purposes of this appeal.

## III.  CONCLUSION

For these reasons, Ritz's appeal is DISMISSED.