In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-3571

FREY CORPORATION, an Illinois
Corporation,

*Plaintiff-Appellant,*

*v.*

CITY OF PEORIA, ILLINOIS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 1:10-cv-01062-JBM-JAG — **Joe Billy McDade**, *Judge.*

ARGUED MAY 21, 2013 — DECIDED AUGUST 16, 2013

Before RIPPLE, WILLIAMS, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Frey Corporation brings the present appeal against the City of Peoria, Illinois, after an unfavorable disposition of its case in the district court. Frey has owned the commercial property located at 1823 West Lincoln Avenue, Peoria, Illinois 61605, for more than forty years. A shopping center is located on the property, which includes retail space

for a grocery store. Frey had been leasing retail spaces within the shopping center for years, apparently without incident. But on November 5, 2009, the tenant renting Frey's grocery store space, Krunal and Jiger, Inc. d/b/a Shop Rite Supermarket (hereinafter "Shop Rite"), ran into serious trouble with the law.

After receiving information that the President of this Shop Rite franchise, Vasant Patel, was illegally selling Viagra from inside the store, Peoria police obtained a search warrant for both Patel and the Shop Rite store. There, police found 121 Viagra pills in Patel's office, which Patel later admitted to selling at the store for $7 per pill. Patel was not a licensed pharmacist, nor did the Shop Rite store contain a pharmacy. As a result, Patel was arrested, indicted on felony drug charges, and later pled guilty to misdemeanor drug charges.

As the City of Peoria took legal action against Patel personally, the City simultaneously took legal action against Patel's business, Shop Rite. On November 12, 2009—only a week after Patel's arrest—the City went after Shop Rite's liquor license. The City charged the store with a violation of Peoria, Ill., Code § 3-28, which prohibits officers of a business holding a liquor license from "engag[ing] in any activity … which is prohibited by … the law of the state or the United States." The Peoria Liquor Commission held a hearing regarding Shop Rite's liquor license on November 24, 2009, and after evaluating the evidence, decided the next day to revoke the grocery store's liquor license. The Commission's decision to revoke Shop Rite's liquor license is not at issue in this case; in fact, appellant Frey even admitted at oral argument that there was "no dispute that the liquor licensee violated the

ordinance."

What is at issue in this case, however, is the additional action taken by the Commission as a result of Shop Rite's violation of Peoria, Ill., Code § 3-28. In its November 25th order, the Commission not only revoked Shop Rite's liquor license; it also revoked "site approval for the retail sale of alcoholic liquors at the location of 1823 W. Lincoln, Peoria, Illinois." Appellant Frey, the owner of 1823 W. Lincoln, believes that this revocation of site approval for the retail sale of alcohol denied the corporation of its property without due process of law. For the reasons stated below, we disagree with Frey's position, and we affirm the judgment of the district court.

# I

Appellant Frey argues that both its procedural and substantive due process rights under the Fourteenth Amendment were violated by the Peoria Liquor Commission's revocation of its site approval. The district court largely ignored Frey's substantive due process claim after finding that Frey had failed to explain the claim sufficiently in its written filings. With respect to Frey's procedural due process claim, the district court determined that Frey "simply ha[d] no property right to vindicate under the due process clause, and [the City of Peoria] owed him no 'process' when revoking the site approval." As such, the district court denied Frey's motion for summary judgment, granted the City's motion for summary judgment, and terminated Frey's case. We review the district court's disposition of Frey's case de novo. *Durable Mfg. Co. v. U.S. Dep't of Labor*, 578 F.3d 497, 501 (7th Cir. 2009).

We turn first to Frey's substantive due process argument, of which we too can easily dispose, given the argument's total lack of development. Frey only mentioned the term "substantive due process" twice in its written submissions to the district court: once in its complaint, and once in its motion for summary judgment. Both times, Frey simply stated that its substantive due process rights had been violated. It never explained how or why the City of Peoria's actions constituted a violation of Frey's substantive due process rights. Even in its briefing to our court, Frey never explained how or why the City of Peoria's actions constituted a violation of its substantive due process rights. Indeed, it became clear at oral argument that Frey was throwing around the term "substantive due process" without fully understanding its meaning. Accordingly, we take this opportunity to remind Frey that

> [s]ubstantive due process is not a blanket protection against unjustifiable interferences with property. And it does not confer on federal courts a license to act as zoning boards of appeals. It is instead a modest limitation that prohibits government action only when it is random and irrational. Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate governmental interest, or alternatively phrased, that the practice be neither arbitrary nor irrational. A property owner challenging a land-use regulation as a violation of due process is therefore obliged to show that the regulation is

> arbitrary and unreasonable, bearing no substantial relationship to public health, safety, or welfare.

*Gen. Auto Serv. Station v. City of Chi.*, 526 F.3d 991, 1000-01 (7th Cir. 2008) (quotations and citations omitted).

Frey has not claimed to have a fundamental right to site approval for the retail sale of liquor on its property (nor should have Frey made such a far-fetched claim, for that matter). As long as the City of Peoria's revocation of site approval did not encroach on one of Frey's fundamental rights, the revocation would only need to be "rationally related to a legitimate governmental interest." *Id*. at 1000. Given the City's strong evidence that prescription drugs were being illegally sold on Frey's property, the revocation certainly meets the rational basis test. Consequently, even if Frey had adequately explained its substantive due process claim, the claim would still fail.

With Frey's substantive due process claim out of the way, we now turn to Frey's procedural due process claim. Frey argues that site approval is a property right within the meaning of the Fourteenth Amendment due process clause, and as a result, the City of Peoria owed Frey some process before revoking its site approval. Thus, before we can evaluate the sufficiency of the process afforded Frey in the revocation of its site removal, we must first assess whether site approval is a protected property right under the Fourteenth Amendment due process clause. Frey advances two arguments why site approval is a protected property right: (1) site approval constitutes a land-use regulation similar to zoning, and (2) site approval is a property right under the language of Illinois law

and the Peoria municipal code.

Frey's first argument—that site approval constitutes a land-use regulation akin to zoning—is interesting. But since Frey never breathed a word of this argument to the district court, we need not address its merits. When a party fails to develop an argument in the district court, the argument is waived, and we cannot consider it on appeal. *United States v. Ritz*, --- F.3d --- , No. 11-3320, 2013 WL 3336718, at *5-6 (7th Cir. July 3, 2013). Frey claims to have raised the argument prior to appeal, but after scouring Frey's filings in the district court, we cannot find any mention of a land-use regulation argument. In all of Frey's filings in the district court, the phrase "land-use regulation" never appears. The word "zoning" does appear once in its response to the City's motion for summary judgment, but only in a block quotation of Peoria, Ill., Code § 3-92. Moreover, Frey never discussed the "zoning" language of § 3-92 in the body of its response.

At oral argument, we questioned Frey about its failure to raise its land-use regulation argument below. Frey responded that this argument had been raised below—*by the City of Peoria*. Citing the City's motion for summary judgment, Frey pointed out that the City had made the following statement: "the cases in which a state eliminated a liquor license either through a legislative change or zoning change are inapplicable to this instant case." This prior statement by the City has nothing to do with Frey's current land-use regulation argument. And just because the City used the word "zoning" once in all of its filings does not mean that a zoning argument was raised below—let alone developed. Even though the general issue of

whether site approval constitutes a protected property right was squarely before the district court, Frey's specific zoning/land-use regulation argument was certainly not before the district court. A party "waive[s] the ability to make a specific argument for the first time on appeal when the party fail[s] to present that specific argument to the district court, even though the issue may have been before the district court in more general terms." *Id*. at *6 (quotation and citation omitted). Frey has "changed [its] theory after losing below[,] and that [change] prevents us from considering" its zoning/land-use regulation argument on appeal. *Id*. at *7.

Since waiver prevents us from considering Frey's first argument regarding site approval as a protected property right, we turn to Frey's second argument—the argument that actually was presented to the district court. Frey argues that Illinois state law and the Peoria municipal code together create a property right in site approval that is protected by the Fourteenth Amendment due process clause. Analogizing site approval for the retail sale of liquor to a liquor license, Frey points out that we have previously found an Illinois liquor license to be a protected property right under the due process clause. *See Club Misty, Inc. v. Laski*, 208 F.3d 615, 618 (7th Cir. 2000) ("[A]n Illinois liquor license is a property right within the meaning of the due process clause of the Fourteenth Amendment … [because it] is revocable during its term only for cause."); *Reed v. Village of Shorewood*, 704 F.2d 943, 948-49 (7th Cir. 1983).

A protected property right under the Fourteenth Amendment due process clause is something that "is securely

and durably yours under state (or … federal) law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain." *Reed*, 704 F.2d at 948. Although the Fourteenth Amendment protects property rights, it does not create them. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution."). Instead, property rights "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*; *see also Reed*, 704 F.2d at 948 (noting that "whether a license or other interest is property for purposes of the due process clause of the Fourteenth Amendment … depends on state (or, where applicable, … federal) law").

Here, Illinois state law is silent on the issue of site approval. This silence, Frey argues, barred Peoria from requiring it to obtain site approval for the retail sale of alcohol in the first place. According to Frey, if the Illinois legislature had approved of local governments imposing a site approval requirement, it would have said so in the relevant state statutes. But Frey's argument ignores the broad language of 235 Ill. Comp. Ann. 5/4-1, the Illinois statute regulating local control over retail alcohol sales, which allows local governments "to establish such further regulations and restrictions upon the issuance of and operations under local licenses not inconsistent with law as the public good and convenience may require."

Under the broad discretionary authority granted by 235 Ill.

Comp. Ann. 5/4-1, Peoria's municipal code both creates and defines a property owner's interest in site approval. Throughout this opinion, we consider the 2009 version of Peoria's municipal code, which was the version in place during the relevant course of events in this case.[1] Peoria, Ill., Code § 3-92 outlines the criteria by which the Peoria Liquor Commission—and later the Peoria City Council—determines whether a site is suitable for the retail sale of alcohol. Moreover, § 3-92 makes it clear that the suitability of a site is contingent upon the "specified class of license"; in other words, some sites may be suitable for some, but not all, classes of liquor licenses. The next four sections of the Peoria, Ill., Code regulate the application process for obtaining site approval, requiring "[a]ny owner of real property desiring to have his property used for the purpose of the retail sale of alcoholic liquors [to] make application to the mayor for approval by the city council of such site for such use." § 3-93(a). Finally, § 3-97(a) (emphases added) lays out the terms and conditions for maintaining site approval, once granted:

---

[1] Peoria, Ill., Ordinance 16940 (Feb. 26, 2013) modified Peoria, Ill., Code §§ 3-92, 3-97, which are two of the most important sections regulating site approval for the retail sale of liquor. To view how these relevant sections of the Peoria, Ill., Code have been recently modified, *see Communication from the City Manager and Interim Corporation Counsel Recommending Adoption of an Ordinance Amending Chapter 3 of the Code of the City of Peoria Pertaining to Liquor License Regulation. (New Communication and New Ordinance)*, LegisStream On Line (Feb. 26, 2013), *available at* http://cmx.peoriagov.org/Agenda/Agenda/MG77271/AS77283/AS77284/AI77313/DO77337/DO_77337.pdf (last visited July 12, 2013).

>The approval for the retail sale of alcoholic liquors under a particular class of license at a particular site *shall remain with that site as long as there is a continuous use of that site* for the sale of alcoholic liquors *under the class of license recommended and approved*, or until a different class of license is actually issued for that site, whichever occurs first, and *as long as no liquor license at that location has been revoked* by the mayor. A site shall be deemed to be continuously used as long as there is not a lapse at the site of more the 12 months in the regular conduct of the business of the retail sale of alcoholic liquors under that particular class of license.

§ 3-97(a) makes clear that site approval does not continue indefinitely; rather, it is expressly conditional on the existence of a liquor license for use on the premises.

As these sections of the Peoria, Ill., Code make clear, the existence of site approval hinges upon the existence of a liquor license for use on the premises. Whether a site is initially approved for the retail sale of alcohol depends at least in part upon the class of liquor license sought. Peoria, Ill., Code § 3-92(a). Whether a site continues to be approved for the retail sale of alcohol depends upon "a continuous use of that site for the sale of alcoholic liquors under the class of license recommended and approved." Peoria, Ill., Code § 3-97(a). And as soon as the liquor license issued for use on the premises ends, so does site approval. If a different class of liquor license is issued for the premises, then site approval goes away, and

the site must be re-approved for the new class of license. More importantly, if a liquor license has been revoked, then site approval also terminates.

Site approval is neither secure nor durable under the terms of the Peoria, Ill., Code; site approval relies instead upon a liquor license for its continued existence. Consequently, site approval obtained by a party who owns property wholly depends on the actions of the party who holds the liquor license for use on that property. As is the case here, the party who owns the property and the party who holds the liquor license may be different. Indeed, any time the proprietor of a liquor store, grocery store, or restaurant rents (and does not own) the premises, the property owner and the liquor license holder will be two different parties. In such a situation, a third party controls what happens to the property owner's site approval—and there is nothing secure or durable about an interest controlled by a third party.

Thus, a Peoria property owner's interest in a site approval is fairly characterized as "meager, transitory, [and] uncertain." *Reed*, 704 F.2d at 948. The interest is meager because site approval depends upon the existence of a liquor license for use on the property. The interest is transitory because site approval ends as soon as the liquor license ends. And the interest is uncertain because the continuation of site approval may entirely depend on the actions of a third party who is not the property owner. Our precedent is clear that meager, transitory, and uncertain interests are not property rights protected by the Fourteenth Amendment due process clause. *Id*. Therefore, the City of Peoria did not owe Frey any process before revoking its

site approval.

Still, Frey does not understand how site approval could fail to be a protected property right under the Fourteenth Amendment due process clause when an Illinois liquor license is a protected property right under our case law. *See Club Misty*, 208 F.3d at 618; *Reed*, 704 F.2d at 948-49. At first glance, it may seem puzzling why site approval for the retail sale of liquor is not a protected property right, yet a license to sell liquor is a protected property right. But a close comparison of the statutory language that creates and defines these two interests reveals just how different they are. With regard to Illinois liquor licenses, 235 Ill. Comp. Stat. 5/3-14 provides:

> [T]he State Commission may refuse the issuance or renewal of a retailer's license, upon notice and after hearing, upon the grounds authorized in Section 6-3 of this Act, and, provided further, that the issuance of such license shall not prejudice the State Commission's action in subsequently suspending or revoking such license if it is determined by the State Commission, upon notice and after hearing, that the licensee has, within the same or the preceding license period, violated any provision of this Act or any rule or regulation issued pursuant thereto and in effect for 30 days prior to such violation.

The grounds for refusing to issue, refusing to renew, or revoking an Illinois liquor license include:

> 1. Failure to make a tax return.

2. The filing of a fraudulent return.

3. Failure to pay all or part of any tax or penalty finally determined to be due.

4. Failure to keep books and records.

5. Failure to secure and display a certificate or sub-certificates of registration, if required.

6. Wilful [sic] violation of any rule or regulation of the Department relating to the administration and enforcement of tax liability.

235 Ill. Comp. Stat. 5/6-3. According to the statutory language cited above—the language that both creates and defines a license holder's interest in an Illinois liquor license—a license "can be revoked only for cause, after notice and hearing." *Reed*, 704 F.2d at 948. Whenever an interest "is revocable (or nonrenewable) only for cause, it *is* property for purposes of determining whether the state can deprive the licensee of it without according him due process of law." *Club Misty*, 208 F.3d at 619. Thus, an Illinois liquor license is protected property under the due process clause of the Fourteenth Amendment.

In contrast, the statutory language that creates and defines a property owner's interest in site approval provides no such protections against revocation. Peoria, Ill., Code §§ 3-92 – 3-97 contain the statutory language that creates and defines site approval, yet nowhere in these sections are property owners provided a right to notice and a hearing before revocation. Nor are property owners assured that their site approval will only be revoked for cause. Quite the opposite—these sections of the

Peoria, Ill., Code make clear that site approval may be revoked at any time, even if the revocation results from actions taken by a third party. No matter how Frey attempts to frame its interest in site approval, it is clear that this interest cannot constitute a protected property right under the due process clause of the Fourteenth Amendment.

## II

Because we find that site approval for the retail sale of alcohol is not a protected property right under the due process clause of the Fourteenth Amendment, Frey's procedural due process claim automatically fails, and no additional analysis is necessary. However, we pause here briefly to note that even if we had found that site approval constituted a protected property right, Frey's procedural due process claim would still fail. Although Frey was not entitled to any process before the revocation of its site approval, the Peoria Liquor Commission nonetheless provided Frey with process, and we believe this process was sufficient to satisfy the requirements of the Fourteenth Amendment.

Frey claims it was denied notice and a hearing before revocation of its site approval, yet the factual record contradicts Frey's claims. In granting summary judgment to the City of Peoria, the district court relied on the City's statement of undisputed material facts. Under normal circumstances, such reliance might call into question whether the district court actually "viewed the facts in the light most favorable to" Frey, as required by summary judgment standards. *Payne v. Pauley*, 337 F.3d 767, 769 (7th Cir. 2003). But the district court's reliance on the City's statement of the facts

was Frey's own fault. Frey failed to respond to the City's statement of undisputed material facts, and under C.D. Ill. Local Rule 7.1(D)(2)(b)(6), "A failure to respond to any numbered fact [in the opposing party's motion for summary judgment] will be deemed an admission of the fact." We "review[] the decision of a district court concerning compliance with local rules … only for an abuse of discretion," and in any case, it is clear to us from our own review of the district court filings that Frey never responded to the City's statement of undisputed material facts. *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1108 (7th Cir. 2004). Therefore, the district court was right to rely on the City's statement of undisputed material facts in its analysis, and we too will rely on the City's statement in our analysis.

According to the City's statement, Peoria Police Officer and Nuisance Abatement Officer Elizabeth Hermacinski twice notified Frey of the November 24, 2009, hearing regarding Shop Rite's liquor license: first, at a meeting on November 16, 2009, and second, in a letter dated November 16, 2009. Although Frey was not a named party to the November 24th hearing (only the City and Shop Rite were named parties), Frey was nevertheless allowed to participate in the hearing. During the penalty phase, the Peoria Liquor Commission permitted Frey's counsel to cross-examine both of the City's witnesses, Officer Hermacinski and Officer Scott Jordan (a liquor investigator).

By twice informing Frey of the hearing and giving Frey's counsel the opportunity to cross-examine the City's two witnesses, the Liquor Commission gave Frey "notice and a

meaningful opportunity to be heard" (even though, as seen in Section I, the Commission had no obligation to do either). *LaChance v. Erickson*, 522 U.S. 262, 266 (1998). As a result, Frey received all the process that the due process clause requires. Frey seems to think that the due process clause entitles the company to a full evidentiary hearing whenever one of its protected property rights is adversely affected, but Frey's thinking defies clear Supreme Court precedent: "In general, something less than a full evidentiary hearing is sufficient prior to adverse administrative action." *Cleveland Bd. of Educ. v. Loudermill*, 370 U.S. 532, 545 (1985). In sum, even if site approval were a protected property right under the Fourteenth Amendment due process clause, Frey would not have been entitled to any additional process.

## III

Frey was not entitled to any process at all before the revocation of its site approval for the retail sale of alcohol. Yet Frey nonetheless received due process of law before the Peoria Liquor Commission revoked its site approval. Consequently, Frey's procedural due process claim fails on all accounts. We accordingly AFFIRM the district court's grant of summary judgment to the City of Peoria.