In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-1118

CHRIS P. LANE,

*Plaintiff-Appellant,*

*v.*

RIVERVIEW HOSPITAL,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:13-cv-01113-TWP-TAB — **Tanya Walton Pratt**, *Judge.*

ARGUED JUNE 10, 2015 — DECIDED AUGUST 26, 2016

Before MANION, WILLIAMS, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Plaintiff Chris Lane sued River-
view Hospital, his former employer, for race discrimination in
terminating his employment as a security guard at the hospi-
tal. The district court granted summary judgment for the de-
fendant. We affirm.

We review a grant of summary judgment *de novo*, and we give the non-moving party the benefit of conflicts in the evidence and of any inferences in his favor that might reasonably be drawn from the evidence. See *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015). Our account of the facts is filtered through that summary judgment lens.

Lane is African American and began working as a security guard at Riverview Hospital in 1999. He had a successful employment record at the hospital, without any formal discipline until the event at the center of this lawsuit.

In August 2012, a 17-year-old male autistic patient started hitting, swinging at, and kicking his caregivers. The situation had gotten so far out of hand that the health care professionals were afraid to approach the young man or to enter the room. A nurse summoned security.

Lane responded and entered the room. He saw the patient kick one of the staff in the back. Lane then tried to restrain the patient, who tried to bite him and then spit in Lane's mouth. As the patient prepared to spit again, Lane slapped him in the face with his open palm, making "solid contact." The patient settled down and stopped swinging and kicking at Lane and the health care professionals in the room.

After the incident, Lane completed a written report for the hospital explaining why he thought the slap was justified under the circumstances. He also filed a report with the Sheriff's Department, where he had status as a special deputy as a condition of his work for the hospital. The recipients of these reports concluded he had shown poor judgment and had overreacted without trying less violent steps to gain control of the situation. The Sheriff's Department actually sought to file a

criminal assault charge against Lane, but the prosecutor declined to bring a charge.

At the hospital, the outcome was different. Ann Kuzee, the hospital's director of human resources, also investigated the incident. Kuzee reviews and enforces Riverview's rules, policies, and procedures, and she becomes involved any time a supervisor proposes to discipline or fire an employee who is not a physician. Kuzee does not have the final say in whether to fire an employee. Her recommendations are presented to the Executive Steering Committee for decision.

After confirming with Lane that he had in fact slapped the patient, Kuzee recommended that his employment be terminated. The hospital has a policy on restraints that prohibits "any form of restraint that is not medically necessary or is used as a means of coercion, discipline, convenience, or retaliation by staff," and another policy prohibits acts or threats of violence. The Executive Steering Committee approved Kuzee's recommendation on the condition that she consult the Sheriff's Department about whether the force used by Lane, a deputized officer, was appropriate. A major at the Sheriff's Department told Kuzee that he thought Lane's slap was not an appropriate use of force for the situation.

The hospital told Lane that if he did not resign, he would be fired. He chose to resign a few days later. The district court treated the situation as a constructive discharge, and that point is not at issue in the appeal.

After exhausting administrative remedies through a complaint to the Equal Employment Opportunity Commission, Lane filed suit for race discrimination in employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e–2(a), and 42 U.S.C. § 1981. We analyze Title VII and § 1981 claims under the same framework. E.g., *Whitfield v. Int'l Truck & Engine Corp.*, 755 F.3d 438, 442 (7th Cir. 2014).

If that were the entire story, we would have an employer's disciplinary decision that would be well within an employer's discretion to make. The question is whether Lane offered enough additional evidence to permit a reasonable inference of race discrimination in the decision.

Plaintiff Lane does not rely on the *McDonnell Douglas* indirect method of proof or any of its variations. See generally *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). He also does not have evidence directly indicating that Kuzee or any other decision-maker was motivated by racial animus. He tries instead to put together what we have often called a "convincing mosaic" of circumstantial evidence to support an inference of discrimination. See *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015); *Hutt v. AbbVie Products LLC*, 757 F.3d 687, 691 (7th Cir. 2014); *Perez v. Thorntons, Inc.*, 731 F.3d 699, 703 (7th Cir. 2013); see also *Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J., concurring) (suggesting that courts avoid unduly formal methods of analyzing discrimination and focus instead on whether circumstances could permit inference of discrimination). The phrase "convincing mosaic" is not a legal test but a metaphor. It describes a case built on circumstantial evidence, in this case about the reasons for the hospital's decision to fire Lane. The core issue is whether Lane has offered evidence that would allow a reasonable jury to infer that he would not have been fired if he were not African American and everything else remained the same. See *Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900,

903–04 (7th Cir. 2006); *Achor v. Riverside Golf Club*, 117 F.3d 339, 341 (7th Cir. 1997).

Lane relies on four incidents to support an inference of race discrimination: an arguably similar incident involving a white nurse; Kuzee's factually incorrect response to the EEOC about her knowledge of that earlier incident; and one comment and one question by Kuzee about race.

First, Lane compares his slap of the autistic patient to another incident involving nurse Matt Rainey, who was not disciplined at all, let alone fired. Rainey was assigned to a young girl brought to the emergency room in February 2011. The girl's mother, Jessi Arreola, argued with Rainey about his treatment of her daughter. As Rainey was leaving the room, Arreola tried to follow him out. Rainey was closing the door behind him when Arreola grabbed the handle to keep him from closing her in the room.

At this point the accounts diverge. According to Arreola, Rainey then started to slam the door, attempting to trap her inside the room, after he had "slapped" away her arm in a "karate style action" as she was grabbing for the handle. Two onlookers reported, however, that Rainey had tried to remove Arreola's hand without using any force.

Rainey's immediate supervisors investigated the incident. They credited Rainey and the two onlookers over Arreola and concluded that Rainey had not slapped her or violated any hospital rule. The supervisors told Kuzee over the telephone about the incident, and they later concluded that Rainey should not be disciplined. Kuzee reviewed and edited the email the supervisors sent to Rainey informing him he would

not be disciplined. She also was aware that Arreola had filed a police report complaining about Rainey.

Under any mode of analysis for a discrimination case, evidence that the employer treated better a similarly situated employee outside the plaintiff's protected class can provide some circumstantial evidence of discrimination. Whether employees are similarly situated is a flexible inquiry. See *Coleman*, 667 F.3d at 841; *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008). The basic question is whether the situations are similar enough, apart from the employees' races, to provide support for a reasonable inference of discrimination. Arguments about the closeness of the "fit" between comparisons will often present questions for trial rather than for summary judgment. See, e.g., *Coleman*, 667 F.3d at 846–47 (reversing summary judgment); *Humphries*, 474 F.3d at 405 (same); *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (same).

Lane and Rainey had different jobs and responsibilities, but as the district court recognized, both were subject to the same hospital policies against violence and use of restraints to coerce patients. See *Coleman*, 667 F.3d at 847–48 (reversing summary judgment; allowing comparison of employees with different jobs and supervisors where same senior manager was responsible for deciding how to enforce same policy on violence against all employees).

The district court concluded that the Rainey incident does not offer a probative comparison because different people made the decisions, first not to discipline Rainey and then to fire Lane. For purposes of summary judgment, though, this difference is disputed as a matter of fact. It is true that Kuzee

did not investigate the Rainey matter herself or make the initial call on discipline, but she was at least informed about the decision/recommendation not to discipline him. If she had disagreed, she had the authority to step in and push for a different response. A reasonable jury could treat her as involved sufficiently in both cases to allow a fair comparison. See *Orton-Bell v. Indiana*, 759 F.3d 768, 777 (7th Cir. 2014) (concluding that employees with different immediate supervisors and in different "chains of command" were similarly situated when same person fired both); *Perez*, 731 F.3d at 707–08 (rejecting argument that employees were not comparators because they had different "nominal" supervisors when both supervisors were involved in reviewing employees' incidents and acted in concert).

The problem for Lane is a more fundamental and undisputed difference between the two incidents from the perspective of the common decision-maker, Kuzee, which is the relevant perspective. Lane *admitted* that he slapped the patient. Rainey *denied* striking Arreola, and the hospital supervisors who investigated the incident credited his account, as backed up by other witnesses. The *accusation* against Rainey was similar to that against Lane, but from Kuzee's perspective, the undisputed facts show, she thought that Rainey actually did nothing wrong. Lane admitted to conduct—the slap in the face—that Kuzee viewed as a serious violation of important hospital policies to protect vulnerable patients. The Rainey incident is not similar enough to support an inference of discrimination.

Lane's next point stems from the EEOC proceedings after Lane filed a charge of discrimination in which he compared

his treatment to Rainey's. The hospital's response, which Kuzee reviewed and approved, asserted that Kuzee had not known about the accusation against Rainey until after she received Lane's charge of discrimination. Lane has offered evidence that Kuzee in fact had known about the Rainey incident when she acted to fire Lane. Kuzee had received a telephone call from Rainey's supervisors who investigated the incident, and she helped edit an email about the Rainey incident. She was also aware that a police report had been filed.

Lane argues that Kuzee lied to the EEOC about a material fact and that the lie supports an inference of illegal discrimination. Kuzee and the hospital argue that her involvement in the Rainey incident was so minimal that the response to the EEOC was just honestly mistaken on this point. The district judge concluded that Kuzee's misrepresentation was an understandable error and that Lane had presented no other evidence to show the misrepresentation was deliberate.

It has long been established that an employer's dishonesty in defending or explaining an employment decision can support an inference of illegal discrimination. See *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993). When an employer's response is factually wrong in a self-serving way on a material fact, the choice between treating it as an honest mistake or a deliberate falsehood is ordinarily a choice for a jury at trial, not for summary judgment. See *Castro*, 786 F.3d at 574; *Testerman v. EDS Technical Products Corp.*, 98 F.3d 297, 303 (7th Cir. 1996). And an assertion that a decision-maker was not aware of the comparator identified by a complaining party can be important, even decisive. If the supposedly common decision-maker was not even aware of the comparator, then a

court cannot infer intentional discrimination from the different treatment.

If there were more substance to the Rainey comparison here, we would find a jury issue here, as well. But the two inferential steps go too far here. To go from this factual discrepancy to an inference of racial bias, a jury would have to conclude first that the discrepancy was the result of a deliberate decision to mislead the EEOC and second that the motive of the deliberate decision to mislead was to conceal unlawful race discrimination. Without further circumstantial evidence of unlawful discrimination, a reasonable jury could not take that step. (The issue here is familiar as the pretext element of the *McDonnell Douglas* framework for circumstantial evidence. See *Castro*, 786 F.3d at 574; *McInnis v. Alamo Community College Dist.*, 207 F.3d 276, 283 (5th Cir. 2000). Even under that framework, such evidence of pretext is not enough by itself to prove discrimination; it becomes a factor only after the plaintiff has shown other circumstances corroborating unlawful intent, including evidence that a similarly situated employee outside the plaintiff's protected class was treated better. That additional evidence is missing here.) Even if we assume that Kuzee and the hospital deliberately misled the EEOC about her role in the Rainey incident, that would not by itself support the further inference of unlawful intent. And the rest of the support here is just too weak to allow a reasonable inference of discrimination.

Lane also relies on evidence of one comment and one question by Kuzee relating to race to support an inference that she discriminated against him based on race. Kuzee made the first of the remarks after the February 2011 incident involving

Rainey and before the August 2012 incident with Lane. In January 2012 a white security guard at the hospital had accused an African American guard of theft. The white guard recalled later that Kuzee reacted to the accusation by saying that she "did not want any trouble" because the other guard "was black."

Kuzee's second remark came in her meeting with Lane about the incident with the autistic patient. Lane mentioned a previous encounter when the same patient had yelled a highly offensive racial slur at him. Later during that same conversation, in explaining his reaction to being spat upon, Lane told Kuzee how his brother had reacted when a person had spit on him when he was younger. Kuzee asked Lane about the race of the boy who had spit on his brother.

Neither of these comments reflects racial animus. The district judge found that neither remark could support a reasonable inference of discrimination. The first comment came about eight months before Lane's firing and did not refer to or involve him in any way. If that comment by a decision-maker had shown racial animus, it would be difficult to hold unreasonable an inference of racial animus eight months later. See *Perez v. Thorntons Inc.*, 731 F.3d 699, 710 (7th Cir. 2013) (comparing logic of "stray remarks" cases to logic of "same actor inference"). But a human resources manager's non-hostile remark that merely acknowledged the potential for race to become an issue in an unrelated incident simply does not support that inference.

The second remark, Kuzee's question, was tied directly to this decision and came from a key decision-maker. It does not, however, support an inference of intentional race discrimina-

tion. Kuzee's job was to find out what happened. As the district judge pointed out, Kuzee asked the question only after Lane himself told her about the patient's use of a vile racial epithet against him on an earlier occasion and about his own brother's experience. Kuzee did not exhibit racial bias by asking a question about why Lane had brought up the story about his brother.

Finally, viewing all of the evidence together, we still find no error in the grant of summary judgment. The undisputed facts show that Lane intentionally struck a patient. Reasonable managers could disagree about the proper response for the hospital, but termination was certainly one reasonable response. Lane's effort to put together a mosaic of circumstantial evidence of race discrimination simply does not hold together sufficiently to present a genuine issue of material fact, even when we give him the benefit of conflicts in the evidence and reasonable inference in his favor. A jury could not reasonably find that Riverview discriminated on the basis of race when it decided to fire Lane. The judgment of the district court is

AFFIRMED.