In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2911

MOHAMMED MAHRAN,

*Plaintiff-Appellant,*

*v.*

ADVOCATE CHRIST MEDICAL CENTER and
ADVOCATE HEALTH AND HOSPITALS CORPORATION,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 C 5730 — **Sara L. Ellis**, *Judge.*

ARGUED JUNE 3, 2020 — DECIDED SEPTEMBER 1, 2021

Before SYKES, *Chief Judge*, and BAUER and ST. EVE, *Circuit Judges*.

SYKES, *Chief Judge*. Mohammed Mahran, an Egyptian Muslim, sued Advocate Christ Medical Center, his former employer, raising claims of employment discrimination under Title VII of the Civil Rights Act of 1964 and the Illinois Human Rights Act ("IHRA"). Mahran, a pharmacist, alleged that Advocate failed to accommodate his need for prayer

breaks; disciplined and later fired him based on his race, religion, and national origin; retaliated against him for reporting racial and religious discrimination; and subjected him to a hostile work environment based on his race, religion, and national origin. The district judge entered summary judgment for Advocate on all claims.

Mahran limits his appeal to two issues. First, he asks us to revive his religious-accommodation claim, arguing that the judge wrongly required him to show that Advocate's failure to accommodate his prayer breaks resulted in an adverse employment action. Second, he argues that the judge failed to consider the totality of the evidence in evaluating his hostile-workplace claim.

Mahran's first argument, which concerns the legal standard for a religious-accommodation claim, is new on appeal. Indeed, he expressly agreed below that an adverse employment action is an element of a prima facie Title VII claim for failure to accommodate an employee's religious practice. He cannot now take the opposite position here; arguments raised for the first time on appeal are deemed waived. And while the judge should have considered all the evidence Mahran adduced in support of his hostile-workplace claim, our own review of the record convinces us that there is not enough evidence for a jury to find that Advocate subjected him to a hostile work environment. We therefore affirm.

## I. Background

Mahran is a native of Egypt and a practicing Muslim. Two decades after completing his pharmaceutical education in Egypt, he became a licensed pharmacist in Illinois. He joined Advocate in November 2013, initially hired as a

"registry pharmacist" for a 90-day probationary period.[1] Upon successful completion of his probationary employment, he was eligible for promotion to full-time pharmacist.

During Mahran's 90-day probationary period, Advocate hired Barbara Bukowski and Dearica Radic as full-time pharmacists without requiring them to first work as registry pharmacists. Mahran complained to Rolla Sweis, the Director of Pharmacy, that Bukowski and Radic had received preferential treatment because they weren't Muslims. He did not know, however, that Bukowski and Radic had prior hospital experience and thus were not required to work as registry pharmacists before being hired full time. Nonetheless, two days after Mahran complained to Sweis, Advocate removed the probationary qualifier and elevated him to full-time pharmacist.

Mahran's supervisor, Judith Brown-Scott, initially gave him "meets expectations" ratings in his performance reviews. But his performance eventually deteriorated. He received his first admonition (a Level 1 warning) for processing a discontinued order for a patient and failing to process the patient's next order. When questioned about the incident, Mahran did not take responsibility and instead blamed a coworker.

Soon after the admonition, Vincent Dorsey, one of Mahran's coworkers, complained that Mahran left numerous unfinished orders at the end of his shift for the next pharmacist to fill. When management investigated, Mahran re-

---

[1] Though Mahran named both Advocate Christ Medical Center and Advocate Health and Hospitals Corporation as defendants, the medical center is only a division of the hospital corporation, not a distinct entity.

sponded that Dorsey was biased against Muslims and often talked down to him and another Muslim coworker named Mohammed Judeh. Neither Mahran nor Dorsey were disciplined.

Brown-Scott issued a final warning (a Level 3 warning) after Mahran failed to verify a complicated order. He had previously been warned about his habit of shirking work—specifically, his pattern of selectively verifying only simple orders and switching his schedule to avoid working busy shifts. Along with the warning, Brown-Scott issued a formal performance deficiency notice describing Mahran's performance problems, prescribing a corrective-action plan, and warning him that failure to comply with the plan could result in termination of his employment. Around this time Brown-Scott also reduced Mahran's performance rating to "approaching expectations." Mahran complained to human resources that he was being disciplined in retaliation for reporting racial and religious discrimination. The human-resources department then withdrew the Level 3 warning but left the reduced performance rating, performance-deficiency notice, and corrective-action plan in place.

A month later, Advocate gave Mahran another Level 3 final warning after he improperly left the pharmacy before his replacement arrived and did not hand off the work to her. Again, Mahran complained that this discipline was discriminatory. Before an arbitration panel could be convened to resolve Mahran's complaint, Advocate terminated his employment for failure to comply with the corrective-action plan.

Mahran filed charges of discrimination and retaliation on the basis of race, religion, and national origin with the

Illinois Department of Human Rights and the Equal Employment Opportunity Commission. After the charges were dismissed, Mahran filed this discrimination suit against Advocate. As relevant here, he raised claims of racial, religious, and national-origin discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a); 42 U.S.C. § 1981; and the IHRA, 775 ILL. COMP. STAT. 5/2-102.[2]

Mahran's allegations can be grouped into three general baskets. He claimed that Advocate (1) discriminated and retaliated against him by giving him negative performance evaluations, imposing discipline, and terminating his employment; (2) subjected him to a hostile work environment; and (3) failed to accommodate his religious practice.

More particularly, Mahran alleged that Advocate discriminated against him by hiring Bukowski and Radic as full-time pharmacists while he, in contrast, was hired as a probationary registry pharmacist. He also claimed that they earned more than the $50-per-hour starting salary he earned as a full-time pharmacist. That allegation was factually unsupported. Bukowski and Radic both started at $50 per hour. Mahran additionally asserted that Advocate deprived him of training opportunities. When he requested two weeks of training in the intensive care unit, Advocate gave him only three hours of ICU training, ostensibly because he was not an ICU pharmacist and did not need the specialized

---

[2] Mahran also pleaded claims for denial of overtime pay in violation the Fair Labor Standards Act, 29 U.S.C. § 207(a), and retaliatory discharge in violation of Illinois common law. The district judge entered summary judgment for Advocate on these claims, and Mahran does not challenge that decision.

training. He also alleged that the trainers in the ICU didn't answer his questions and that one of them shouted at him.

As further evidence to support his claim of religious bias, Mahran contended that he was denied vacation time on a discriminatory basis. Though he received time off for two Islamic holidays in 2015, he was denied vacation time for Eid al-Fitr in 2016. Advocate explained that four pharmacists had already reserved vacation time for that date—the maximum number that could be on vacation at the same time. Mahran rejected this explanation, noting that his coworker Katie Khouri was permitted to take 18 days off even though four pharmacists had reserved days off during the same period. But Khouri had switched shifts with other pharmacists on some of those days to avoid understaffing, and Sweis approved the other days because Khouri was getting married, which Sweis considered worthy of a special exception.

Mahran's hostile-environment claim centered on allegations about offensive comments related to his race and national origin. Mahran claimed that Sweis once referred to his native country when she corrected the way he prioritized orders. She said: "This is how you do it in Egypt. Here it's completely different." Mahran complained to a human-resources employee that Sweis was a racist. The employee simply replied, "[N]o, Rolla is good; she's fine; we trust our managers." Mahran also asserted that Judeh overheard another pharmacist say that he would not "go to [a] marriage of brown people." When he complained to Brown-Scott, she brushed it off by saying, "there is no racial discrimination here; you see I am African-American."

Mahran's religious-accommodation claim rested on his contention that Advocate denied prayer breaks to Muslims. During each shift, pharmacists were entitled to take two 15-minute breaks and one 30-minute meal break, but they had to stagger their breaks to ensure adequate coverage in the pharmacy. Muslim pharmacists used these breaks to say daily prayers. Mahran alleged that over time, Sweis became concerned that the prayer breaks were negatively impacting patient care and prohibited Muslims from praying during the two 15-minute breaks. He claimed that the clinical manager of the pharmacy department told another Muslim pharmacist to "pass the message" to all Muslim pharmacists that they were no longer permitted to use their breaks for prayers. Mahran also asserted that the evening supervisor once prevented him from taking a prayer break and told him he couldn't take prayer breaks anymore.

Advocate moved for summary judgment on all claims, and the judge granted the motion in two separate orders. Mahran challenges only two aspects of the judge's analysis, so we limit our discussion accordingly. First, in rejecting his hostile-workplace claim, the judge considered only his allegations of offensive comments, concluding that the comments, as Mahran described them, were neither severe nor pervasive. That was enough to defeat the claim.

Second, the judge ruled in Advocate's favor on the religious-accommodation claim. The parties had agreed in their summary-judgment briefing that to establish a prima facie case, Mahran needed to show that (1) his religious practice conflicted with an employment requirement; (2) he brought the need for a religious accommodation to his employer's attention; and (3) the unaccommodated religious

practice was the basis of an adverse employment decision. *EEOC v. United Parcel Serv.* ("*UPS*"), 94 F.3d 314, 317 (7th Cir. 1996).[3] The judge adopted this statement of law and expressly noted that the parties agreed on the legal standard. Then, applying the agreed-upon legal framework, the judge ruled that Advocate was entitled to summary judgment because Mahran presented no evidence that he suffered an adverse employment action based on his prayer breaks.

## II. Discussion

We review a summary judgment de novo, construing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in his favor. *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020). Although Mahran was represented by counsel in the district court, he filed his notice of appeal pro se. When we asked him to clarify if he intended to proceed without counsel, he asked us to appoint an attorney to represent him on appeal. We denied the motion because Mahran does not satisfy the requirements to proceed in forma pauperis. But we appointed a pro bono lawyer as amicus curiae to argue for reversal. Mahran accepted the arguments advanced by the amicus and did not file his own briefs.[4]

---

[3] Our articulation of the elements of a prima facie case in *UPS* uses the phrase "adverse employment decision." *EEOC v. United Parcel Serv.* ("*UPS*"), 94 F.3d 314, 317 (7th Cir. 1996). In his district-court brief, Mahran misquoted this passage from *UPS*, using the phrase "adverse employment *action*." The judge adopted the mistaken quotation in her decision.

[4] The court thanks amicus curiae Randall D. Schmidt and the Edwin F. Mandel Legal Aid Clinic of the University of Chicago Law School.

Mahran's amicus challenges only two aspects of the judgment below. First, he argues that the religious-accommodation claim should be reinstated because an employer's failure to accommodate an employee's religious practice is itself actionable, regardless of whether an adverse employment action resulted. Second, he asks us to reinstate the hostile-workplace claim because the judge considered only the alleged offensive comments instead of evaluating the totality of the evidence Mahran adduced.

## A. Religious-Accommodation Claim

Relying on our decision in *UPS*, 94 F.3d at 317, the parties agreed in the district court that Mahran needed to show that his unaccommodated religious practice was the basis of an adverse employment action in order to establish a prima facie case on his religious-accommodation claim under Title VII. The judge entered summary judgment for Advocate on this claim because no evidence shows that Mahran's prayer breaks resulted in an adverse employment action against him. Mahran's amicus now reverses course, arguing that an employer's failure to accommodate an employee's religious practice is itself actionable even if it does not lead to an adverse employment action, such as discipline or termination. The amicus contends that this is the best reconciliation of our precedents, and if it is not, then *UPS* should be overruled.

This argument was not raised in the district court and is therefore waived. "[A] party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *United States v. Ritz*, 721 F.3d 825, 827 (7th Cir. 2013) (quotation marks omitted). Arguments raised for the first time on

appeal are deemed waived. *Id.* As the district judge herself noted, Mahran expressly agreed that to establish a prima facie case on his religious-accommodation claim, he must show that he suffered an adverse employment action as a result of his unaccommodated religious practice. He cannot win reversal by adopting the opposite position now.

In his reply brief, amicus suggests that circuit precedent so clearly required proof of an adverse employment action that any argument to the contrary would have been futile in the district court. We have on rare occasions reviewed a pure issue of law raised for the first time on appeal if raising the issue in the district court would have been futile. *See, e.g.*, *Hively v. Ivy Tech Cmty. Coll. of Ind.*, 853 F.3d 339, 351 (7th Cir. 2017) (en banc).

We decline to take that unusual step here. It would not have been futile for Mahran to challenge the way in which our decision in *UPS* articulated the elements of a religious-accommodation claim under Title VII. Other plaintiffs and judges had done so before him. *See, e.g.*, *Nichols v. Ill. Dep't of Transp.*, 152 F. Supp. 3d 1106, 1121–22 (N.D. Ill. 2016). Indeed, the judge took note of the *Nichols* case when she accepted the parties' agreed-upon statement of the legal framework as articulated in *UPS*.

It would be especially improper for us to accept this stark turnabout in light of the Supreme Court's recent decision in *United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020). There the Ninth Circuit identified a new legal issue not raised by the parties and sua sponte appointed three amici to address it. *Id.* at 1578. The court eventually sided with the amici, but the Supreme Court vacated the decision, explaining that by sua sponte recasting the issue on appeal and appointing

amici to advance the new argument, "the appeals panel departed so drastically from the principle of party presentation as to constitute an abuse of discretion." *Id.*

To be sure, this case doesn't present the kind of egregious judicial transformation that occurred in *Sineneng-Smith*, where the Ninth Circuit injected a legal theory of its own making into the case and then appointed counsel to argue it. Here the about-face originated with the amicus, not the court. But *Sineneng-Smith* clearly counsels against addressing an issue of law presented by a nonparty for the first time on appeal. It would be improper to relieve Mahran of his waiver here.

### B. Hostile-Workplace Claim

Mahran's amicus also contends that the judge ignored relevant evidence in her evaluation of the hostile-workplace claim. The judge explained that Mahran proffered two types of evidence in support of this claim: allegedly offensive comments and disparate treatment. She decided that it was more appropriate to consider Mahran's disparate-treatment evidence separately, not in relation to his hostile-environment claim. Considering only Mahran's allegations about offensive comments, she concluded that no reasonable jury could find that Advocate subjected him to a hostile work environment.

Separating the evidence into one analytical category or another is understandable but mistaken under recent circuit precedent. As explained in *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016), it's best to resist the temptation to rigidly compartmentalize the evidence in discrimination cases into different analytical boxes; rather, "all

evidence belongs in a single pile and must be evaluated as a whole." *Id.* at 766.

Although Mahran's evidence should have been considered more holistically, we're confident that summary judgment for Advocate was proper. Our review is de novo, and on this record—construed in its entirety and in Mahran's favor—no reasonable jury could find that Advocate subjected him to a hostile work environment on the basis of his religion, race, or national origin.

Mahran brought this claim under three statutes—Title VII, 42 U.S.C. § 1981, and the IHRA—but the legal standard is the same under all three. To prevail, a plaintiff must show that "(1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability."[5] *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (quotation marks omitted). Whether harassment qualifies as severe or pervasive depends on contextual factors such as "the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance." *Id.* (quotation marks omitted).

---

[5] This test from the Title VII framework is equally applicable to § 1981 and IHRA claims. *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) (noting that the same framework applies to Title VII and IHRA claims); *Lane v. Riverview Hosp.*, 835 F.3d 691, 695 (7th Cir. 2016) (noting that the same framework applies to Title VII and § 1981 claims).

Mahran has not made the required showing. The conduct he complains of either lacks factual support or does not remotely qualify as objectively offensive harassment based on a protected trait. Even if some of his evidence fits the bill, the harassment was not so severe or pervasive that it altered the conditions of his employment.

Mahran complains that Advocate created a hostile work environment by denying him specialized ICU training, paying him less than other pharmacists, rejecting his request for vacation time, hiring non-Muslims as full-time pharmacists before him, and disciplining and later firing him. But he has not shown that any of these incidents amounted to objectively offensive harassment based on his race, religion, or national origin. He was denied ICU training not because of his race or religion but because he was not hired to be an ICU pharmacist. There is no evidence that similarly situated pharmacists were paid more than him.

Regarding time off, the record reflects that Mahran was denied vacation time for the 2016 Eid al-Fitr holiday because too many other pharmacists had already requested and been granted the same days off; indeed, the coworkers who received the vacation days were other Muslims. Mahran points to his coworker Khouri as a similarly situated employee whose vacation requests were granted more often. But the record shows that some of her days off actually involved shift trades with other pharmacists, which ensured full coverage in the pharmacy; others were granted because she was getting married, which Advocate treated as an extenuating circumstance. Whatever the wisdom or fairness of that decision, it's not evidence of racial or religious discrimination.

As for Bukowski and Radic, Advocate hired them as full-time pharmacists without a probationary period because they had prior hospital experience. And finally, Mahran has no evidence that Advocate disciplined and ultimately fired him for any reason other than that he was not meeting legitimate work expectations. In sum, Mahran has not shown that any of these incidents—independently or in combination—contributed to an environment of severe or pervasive racial or religious harassment.

That leaves the allegedly offensive comments. According to Mahran's version of events, Brown-Scott responded to his complaints about racism by referring to her own race; she is black. An employee in human resources assured him that Sweis was not a racist and that she trusted her. Sweis once remarked that pharmacists in Egypt might prioritize orders in a certain way, but it was different in the United States. None of these remarks is objectively offensive; no reasonable person could find any of them hostile or abusive. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

Mahran also claimed that his coworker Judeh overheard another pharmacist say that he would not "go to [a] marriage of brown people." This comment appears only in Mahran's deposition, and the judge correctly excluded it as inadmissible hearsay. *See* FED. R. EVID. 801(c); *see also Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007). The same analysis applies to Mahran's allegation that another Muslim pharmacist told him that the clinical manager asked him to pass on the message that Muslim pharmacists were not permitted to take prayer breaks. Setting aside the hearsay problem, nothing in the record suggests that this alleged "message" was actually carried out in fact. Regardless, these

isolated, offhand comments—not directed at Mahran him-self—do not amount to an objectively hostile work environment. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 271–72 (7th Cir. 2004).

For these reasons, summary judgment for Advocate was clearly appropriate.

AFFIRMED