In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3413

ALFREDO ABREGO,

*Plaintiff-Appellant,*

*v.*

ROBERT WILKIE, Secretary of Veterans Affairs,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15-cv-01281— **Matthew F. Kennelly**, *Judge.*

ARGUED OCTOBER 22, 2018 — DECIDED OCTOBER 30, 2018

Before FLAUM, EASTERBROOK, and SCUDDER, *Circuit Judges*.

FLAUM, *Circuit Judge*. Alfredo Abrego, a former dental assistant at a Veterans Affairs ("VA") dental clinic, brought an employment discrimination action pursuant to Title VII against the Secretary of Veterans Affairs (the "Secretary").[1] He

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), the current Secretary Robert Wilkie has been automatically substituted as a party to this action in place of former Secretary David J. Shulkin.

alleged: (1) he was discriminated against based on his gender (male) and race (Hispanic); (2) he was retaliated against for filing EEO complaints; and (3) he faced a hostile work environment. The district court granted summary judgment in favor of the Secretary. We affirm.

## I.  Background

On June 19, 2011, Abrego began work as a dental assistant at a VA dental clinic in North Chicago, Illinois. He was initially assigned to work with Dr. William Strampe. According to Abrego, Strampe treated him poorly. He claims Strampe "harassed" him and was "short tempered." Additionally, he maintains Strampe did not allow him to schedule patients, use computer resources, or make ward visits. Based on this tension, Strampe and Abrego met with Dr. Peter Bidny, the head of the clinic, to "turn[] things around." However, Abrego described the meeting as "kind of unfair," and according to Strampe, Abrego interrupted Strampe, raised his voice, and abruptly left.

Despite Bidny's warning that Abrego could be terminated during his initial probationary period for his inability to work well with others, conflict continued. On October 8, 2011, Abrego became angry when, while he was in the bathroom, Strampe knocked on the door because patients were waiting. On January 3, 2012, a patient called Abrego "retarded," and Abrego says Strampe did not support him or allow him to defend himself. And also in January, Strampe was "short tempered" after Abrego left work about an hour early due to an approaching blizzard, even though Strampe had another patient. On January 26, 2012, Bidny, Strampe, and Abrego had another meeting, and eventually, in March 2012, Abrego was assigned to a different dentist. Abrego claims Strampe treated

his new female assistant more favorably; for example, he says Strampe brought her on ward exams.

On July 9, 2012, Abrego received a letter of counseling that referenced three instances of inappropriate conduct: (1) interrupting Strampe at a meeting; (2) arguing with a patient, clenching his fists when told to stop, and refusing to work with the patient in the future; and (3) shouting at a coworker. Shortly thereafter, on August 27, 2012, Abrego filed a complaint with the EEO. In it, he alleged race and sex discrimination amounting to a hostile work environment. He identified nineteen incidents from 2011 and 2012, mostly involving his interactions with Strampe.

On October 15, 2012, Abrego's supervisor sent him a letter of inquiry. This letter asked for an explanation about three incidents: (1) telling a coworker that he "like[s] tall woman" and "everyone is the same height in bed"; (2) a discussion with coworkers about race that involved yelling; and (3) an aggressive meeting with a coworker. On December 21, 2012, Abrego received a formal reprimand for yelling at a coworker.

Although Abrego received "fully successful" ratings on his 2011, 2012, and 2013 performance evaluations, the reviews also discussed Abrego's combative workplace behavior. On the 2011 evaluation, Strampe emphasized instances when Abrego "lost his composure and was overly resistant to working with other dentists." Likewise, on the 2012 evaluation, Strampe wrote that "Abrego has worked very hard," but there were "a number of incidents where he ha[d] lost his composure that ha[d] significantly detracted from his overall performance." Strampe concluded that to be successful, Abrego needed to "focus more on the patient and on assisting his dentist," and also "maintain[] a good attitude, … maintain his

composure and control his temper, … learn to accept con-
structive criticism, and … develop a respect for authority."
Likewise, Bidny commented on Abrego's "issues regarding
corporate citizenship, specifically in reference to communica-
tion with Dr. Strampe … as well as confrontations with a
number of coworkers." As for his 2013 review, Abrego claims
Dr. Fredrickson, the assistant director of dental services,
forced the rating to be changed from "outstanding" to "fully
successful."

On January 17, 2014, the VA suspended Abrego for four-
teen days for illegally recording his supervisor. About a
month later, on February 7, 2014, Abrego filed a second EEO
complaint. He alleged that his 2013 evaluation and fourteen-
day suspension were in retaliation for filing his first EEO com-
plaint.

Starting in June 2014, Abrego had several incidents with
his new supervisor, Cari Pietrzyk. The conflicts include: Pie-
trzyk questioning Abrego when he arrived late to the clinic;
Pietrzyk attempting to locate Abrego when he was absent
during work hours; Pietrzyk ending an all-assistants meeting
due to Abrego's disrespectful and disruptive behavior; Pie-
trzyk following up on Abrego's incomplete assigned tasks;
and Pietrzyk investigating other coworkers' complaints about
intimidation by Abrego. Additionally, tension arose because
Pietrzyk told Abrego to limit time spent volunteering during
work hours due to the impact his absences were having on
patient care.

On August 6, 2014, Abrego's supervisor issued him a letter
of inquiry related to these conflicts. The letter asked for an ex-
planation about three "[i]nappropriate actions against a su-
pervisor" and four "[a]ctions where jobs [were] not done in a

timely manner." On October 9, 2014, he received another let-
ter of inquiry about conflict with Pietrzyk.

On October 3, 2014, Abrego filed a third EEO complaint.
He alleged gender discrimination, retaliation, and a hostile
work environment. On November 19, 2014, the clinic issued
Abrego a proposed notice of removal based on the conduct
outlined in the August 6, 2014 letter of inquiry. Abrego issued
a written response and met with Dr. Holt, the director of the
clinic, to give an oral response. Holt sustained the charges,
and Abrego's removal became effective December 19, 2014. At
some point, Abrego added reference to the removal to his
third EEO complaint.

In early 2015, the Office of Employment Discrimination
Complaint Adjudication (the "Office") issued a final agency
decision on Abrego's August 27, 2012, and February 7, 2014
EEO complaints, ruling against him on all claims. In August
2015, the Office issued a final agency decision on Abrego's Oc-
tober 3, 2014 EEO complaint. Again, it rejected all of his
claims.

In February 2015, Abrego brought a complaint against the
Secretary; he filed the operative first amended complaint on
November 5, 2015. The complaint has six counts: Counts 1
and 4 are titled "Tile VII-Race Discrimination-Hostile Envi-
ronment"; Counts 2 and 5 are titled "Title VII-Sex Discrimina-
tion-Hostile Environment"; and Counts 3 and 6 allege retalia-
tion and a hostile workplace based on Abrego's EEO activity.
The district court summarized Abrego's claims:

The race discrimination and hostile environ-
ment claims in Count 1, the sex discrimination
and hostile environment claims in Count 2, and
the retaliation and hostile environment claims
in Count 3 are based on the incidents alleged in
Abrego's August 2012 and February 2014 EEO
complaints. The race discrimination and hostile
environment claims in Count 4 and the sex dis-
crimination and hostile environment claims in
Count 5 are based on the incidents alleged in the
October 2014 EEO complaint. Lastly, the retali-
ation and hostile environment claims in Count
6 are based on the incidents alleged in the Octo-
ber 2014 EEO complaint, the November 2014
proposed letter of removal, and Abrego's subse-
quent removal in December 2014.

On May 18, 2017, the Secretary moved for summary judg-
ment, arguing Abrego could not establish a prima facie case
of discrimination or retaliation and failed to show that the
clinic was a hostile work environment. Additionally, the Sec-
retary maintained that Abrego failed to administratively ex-
haust his discrimination claims raised in Counts 4 and 5 based
on the October 2014 EEO complaint. The district court granted
the Secretary's motion. This appeal followed.

## II. Discussion

We review a grant of summary judgment de novo, "con-
struing all facts and drawing all reasonable inferences in favor
of the party against whom the motion under consideration
was filed." *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673
(7th Cir. 2016). "Summary judgment is appropriate where
there are no genuine issues of material fact and the movant is

entitled to judgment as a matter of law." *Id.* It is the responsibility of the movant to identify the particular portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party has carried this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must set forth specific facts showing a genuine issue for trial. *Id.* at 587.

### A. Waiver and Administrative Exhaustion

Prior to filing a Title VII lawsuit, "[a] federal employee must exhaust his administrative remedies," including filing a timely EEO complaint with the relevant agency. *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099 (7th Cir. 2013). "[T]he scope of the complaint brought before the administrative agency limits the scope of subsequent civil proceedings in federal court; in other words, plaintiffs may pursue only those claims that could reasonably be expected to grow out of the administrative charges." *Id.* at 1099–1100.

In the district court, the Secretary argued that Counts 4 and 5—which alleged race and sex discrimination based on the October 2014 EEO complaint—should be dismissed due to Abrego's failure to exhaust administrative remedies. Because Abrego made no attempt to respond to the Secretary's exhaustion arguments at summary judgment, the district court correctly concluded that Abrego waived any discrimination claims reliant on the 2014 EEO complaint. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). Moreover, Abrego did not challenge the court's exhaustion and wavier

findings on appeal, again waiving any arguments to the contrary. *Cf. Cole v. Comm'r of Internal Revenue*, 637 F.3d 767, 772–73 (7th Cir. 2011).

## B. Race and Sex Discrimination

Under Title VII, an employer may not discriminate based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). To succeed on a Title VII claim, the plaintiff-employee must prove three elements:

> [1] he is a member of a class protected by the statute, [2] that he has been the subject of some form of adverse employment action (or that he has been subjected to a hostile work environment), and [3] that the employer took this adverse action on account of the plaintiff's membership in the protected class.

*Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013). The legal standard used to evaluate a discrimination claim "is simply whether the evidence," considered as a whole, "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). While we may use the familiar burden-shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as "a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases," it is "not the only way to assess circumstantial evidence of discrimination." *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

Abrego maintains he presented sufficient evidence to permit a factfinder to conclude he suffered an adverse employment action[2] based on his race and sex. We disagree. Abrego points to no evidence to support an inference that he was suspended and terminated as a result of race or sex discrimination. Rather, Abrego was suspended and terminated for legitimate reasons. The Secretary points to substantial evidence that Abrego was not performing up to the expectations of his job: For example, he argued with a patient; he said he would refuse to assist a patient in the future; he yelled and intimidated coworkers; and he behaved disrespectfully towards his supervisor.

To be sure, Abrego received "fully successful" performance reviews. However, we do not "merely consider whether a plaintiff's actual job performance was satisfactory"; rather, we must also contemplate "factors such as insubordination and workplace camaraderie." *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1158 (7th Cir. 2014); *see also Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) ("We are unpersuaded by [the employee's] argument that evidence of her

---

[2] The district court properly concluded that the only actionable adverse employment actions are Abrego's January 2014 fourteen-day suspension and his December 2014 removal. Abrego's various complaints about how his supervisors were "short tempered," "hostile," and unfairly critical are not actionable under Title VII. *See Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) ("General hostility and comments do not qualify as actionable adverse employment actions unless the hostility was severe and pervasive."). Likewise, Abrego's negative evaluations and letters of inquiry are not adverse employment actions. *See Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 731 (7th Cir. 2004) ("[A] negative evaluation or admonishment by an employer does not rise to the level of an adverse employment act.").

poor job performance must be balanced against [her] 'favorable performance reviews' ….."). In fact, the VA explicitly noted several instances of inappropriate behavior in Abrego's performance reviews. They highlighted: times when Abrego "lost his composure" and was "overly resistant to working with other dentists"; "issues regarding corporate citizenship, specifically in reference to communications with Dr. Strampe"; and "confrontations with a number of coworkers."

Abrego points to several specific employees he says were similarly situated to him that Strampe and other VA administrators treated more favorably, and he contends such disparate treatment permits an inference of discrimination. "All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination." *Filar v. Bd. of Educ. of City of Chi.*, 526 F.3d 1054, 1061 (7th Cir. 2008). In presenting a similarly-situated employee, "the comparator must … be similar enough 'to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, [so as to] isolate the critical independent variable: complaints about discrimination.'" *Id.* (alteration in original) (quoting *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)).

First, Abrego highlights Strampe's treatment of Audrey Velis, a fellow dental assistant. Abrego says Strampe gave favorable treatment to Velis because he "showed [her] more respect" and took her on ward exams. Additionally, he claims Velis "was not disciplined for yelling at a co-worker" and "was allowed to take a leadership course during her probation period." While it is true that Velis, like Abrego, was a dental assistant Strampe supervised, Abrego fails to show that Velis had the same "shortcomings." *See Burks v. Wis. Dep't of*

*Transp.*, 464 F.3d 744, 751 (7th Cir. 2006) ("[I]n order to show that a coworker is similarly situated to a terminated employee, the employee must show that the other coworker had a 'comparable set of failings.'" (quoting *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 530 (7th Cir. 2003))). Abrego was suspended and ultimately terminated for a pattern of misbehavior and inability to follow instructions. He had multiple confrontations with supervisors, coworkers, and patients. By contrast, Abrego's only claim regarding Velis's misbehavior is one instance in which she was "not disciplined for yelling at a co-worker."[3]

Second, Abrego maintains that other dental assistants—Rose Agado, Cathy Anderson, and Trina Thomas—were treated more favorably because they received bonuses. However, he makes no claim that they had any behavioral issues.

Third, Abrego says Clarita Henne and Peter Bidny received preferential treatment because they were not disciplined for improperly accessing his medical records. But Henne and Bidny had very different roles than Abrego. Neither is a dental assistant; Bidny is a staff dentist and a former department head, and Henne is a management assistant. Indeed, as a department head, Bidny was Abrego's direct supervisor, and "ordinarily, it will not be the case that a plaintiff is similarly situated to another employee when the plaintiff is subordinate to that employee." *Id.*

---

[3] As the district court stated, "Abrego's additional assertion that Velis was allowed to participate in a leadership course during her probation period is likewise inapposite because he points to no evidence that he attempted to participate in a similar course but was denied the opportunity to do so."

In sum, the evidence taken "as a whole" does not "permit a reasonable factfinder to conclude that [Abrego's] race [and] sex … caused … [his] adverse employment action." *See Ortiz*, 834 F.3d at 765. As the district court concluded, "[i]nstead of pointing to admissible evidence from which a reasonable fact-finder could infer race [or sex] discrimination, Abrego merely repeats that he *believes* he was treated differently from coworkers because of his race [and sex]." The court is correct that these personal beliefs "are insufficient to give rise to a genuine factual dispute over whether he was the victim of race [or sex] discrimination."

### C. Retaliation

To survive summary judgment on a Title VII retaliation claim, an employee "must produce enough evidence for a reasonable jury to conclude that (1) she engaged in a statutorily protected activity; (2) the [defendant] took a materially adverse action against her; and (3) there existed a but-for causal connection between the two." *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017). We consider the evidence as a whole and conduct a "straightforward inquiry: Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the [materially adverse action]?" *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016) (citing *Ortiz*, 834 F.3d at 765).

Abrego argues he was retaliated against for filing three EEO complaints in August 2012, February 2014, and October 2014. It is undisputed Abrego engaged in statutorily-protected activity when he filed those EEO complaints. *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016). However, Abrego failed to present evidence that would permit a jury to

infer his filing of the EEO complaints caused his January 2014 suspension and December 2014 removal.[4]

In the Title VII retaliation context, causation can be established by circumstantial evidence, which includes, for example, "suspicious timing, a pretextual explanation for the termination, and evidence that similarly situated employees were treated differently." *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016). This list is not exclusive; the plaintiff can point to any "other evidence from which an inference of discriminatory intent might be drawn." *Id.* at 1019.

Abrego relies primarily on the close temporal proximity between his third EEO complaint—filed on October 3, 2014— and the VA's issuance of a letter notifying him of his removal—sent on November 19, 2014. However "temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011); *see also Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011) ("[S]uspicious timing alone is almost always insufficient to survive summary judgment."). Rather, a short gap "may permit a plaintiff to survive summary judgment" only if "there is also other evidence that supports the inference of a causal link."

---

[4] Abrego identifies a number of other unfriendly actions that he says were in retaliation for filing the EEO complaints; for instance, he says his supervisors became short tempered, he was denied training on an X-ray machine, he was denied absences, and he was limited in his ability to volunteer. However, unlike the suspension and removal, these occurrences are "petty slights" and "minor annoyances," not materially adverse employment actions. *See Boss v. Castro*, 816 F.3d 910, 918–19 (7th Cir. 2016).

*Lang v. Ill. Dep't of Children & Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004).

Abrego fails to point to any other circumstantial evidence to allow a reasonable jury to conclude that but-for his filing of the EEO complaints, he would not have been suspended or removed. As discussed above, Abrego was terminated for a plethora of legitimate reasons, including conflict with patients, coworkers, and supervisors, and the failure to complete assigned tasks. Abrego points to no evidentiary support that those reasons are pretextual. Additionally, while Abrego attempts to identify similarly-situated employees who he says were treated favorably, those individuals did not have a "comparable set of failings." *See Burks*, 464 F.3d at 751.

### D. Hostile Work Environment

Last, Abrego alleges the VA created a hostile work environment. "Title VII … forbids employers from requiring people to work in a discriminatorily hostile or abusive environment." *Boss v. Castro*, 816 F.3d 910, 919–20 (7th Cir. 2016). "When 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or [pervasive] to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Id.* at 920 (quoting *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014)). To survive summary judgment, Abrego must present evidence demonstrating "(1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Id.* We consider the totality of circumstances, examining factors such as: "the frequency of improper conduct, its

severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it un-reasonably interferes with the employee's work perfor-mance." *Id.*

To support his claim, Abrego contends his supervisors were "short tempered," "hostile," unfairly critical, and disre-spectful. He also says he was "subjected to excessive monitor-ing." Such conditions are not objectively offensive, severe, or pervasive. They do not create a "workplace … permeated with discriminatory intimidation, ridicule, and insult." *See id.* (quoting *Alexander*, 739 F.3d at 982). In any event, Abrego did not present sufficient evidence to permit a reasonable jury to find that the alleged harassment was based on his race or sex, or in retaliation for filing EEO complaints. Thus, the district court properly granted summary judgment on Abrego's hos-tile work environment claims.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.