┌─────────────────────────────────────────┐
**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1
└─────────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 14, 2019
Decided December 10, 2019

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 18-3347

| | |
|---|---|
| LOUIS PHILLIPS,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>RICHARD V. SPENCER,<br>Secretary, Department of the Navy of<br>the United States,<br>    *Defendant-Appellee.* | Appeal from the United States District<br>Court for the Northern District of Illinois,<br>Eastern Division.<br><br>No. 15-cv-05721<br><br>Andrea R. Wood,<br>*Judge.* |

**O R D E R**

Louis Phillips, a former Navy police officer, sued the United States Navy for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. He now appeals the district judge's entry of summary judgment for the Navy. Because no reasonable jury could find that Phillips was fired because of his race or as retaliation for opposing race discrimination, we affirm.

**I. Background**

From 2003 until his termination in 2012, Phillips, who is black, worked as a police officer at Naval Station Great Lakes, a navy base located near North Chicago. (Although

a military base, Great Lakes employs a civilian police force.) He was assigned to the night shift, during which his primary duty was to patrol the base. His shift, like all shifts, was supervised by a watch commander, who in turn reported to the deputy police chief.

In 2010, James Pittman became the night shift's watch commander. At some point between 2010 and 2012 (the record is not more specific), Phillips complained to Deputy Chief James Knapp and other supervisors that Pittman mistreated black detainees and that other officers regularly used racial slurs. Phillips asserts that Pittman was aware of these complaints, as well as unrelated race-discrimination complaints against other defendants that Phillips filed in 2007 and 2009 with the Equal Employment Opportunity Commission.

The collective bargaining agreement between the Navy and the police officers' union included a leave policy. The policy required officers who were going to miss work to request leave from a supervisor. In practice, however, watch commanders had long allowed officers simply to call the police dispatcher and report their planned absence without obtaining permission from a supervisor. But when Pittman became watch commander, he strictly enforced the written policy. Phillips nonetheless continued to follow the old practice of calling the dispatcher to report his absence, without obtaining a supervisor's permission.

Pittman marked Phillips "Absent Without Leave" each time that he violated the written policy. Between December 2010 and February 2011, Phillips accumulated 15 leave violations. Pittman met with Phillips to discuss the absences. The parties dispute whether Pittman explained at the meeting that Phillips was required to request leave from a supervisor. But they agree that Pittman recommended a 14-day suspension, which Knapp issued. Pittman also wrote to Phillips that the reason for his suspension was that he had "repeatedly been late to work, failed to call in to request leave, and been AWOL on numerous occasions." Pittman listed 15 dates on which Phillips "did not follow the procedures for requesting leave."

After Phillips returned from the suspension, he was marked AWOL five more times: twice for calling dispatch instead of requesting leave from a supervisor; once for not requesting leave until after missing his shift; once when he was stuck in traffic and went home instead of following a supervisor's orders to come in late; and once for missing a mandatory training. As for the last incident, Phillips knew that he was scheduled for training but disputes being told that the training was mandatory.

Pittman also cited Phillips for two other incidents. First, Pittman cited Phillips for leaving his post while assigned to "late car" duty. Officers on late-car duty must remain on duty after their shift typically ends and until a supervisor relieves them. This ensures that someone is on patrol while officers from the next shift complete roll call. Toward the end of one of Phillips's late-car shifts, a burglar alarm on the base went off. Phillips did not respond, leaving the other officer assigned to late-car duty to respond alone, in violation of the base's policy that two officers must respond to every burglar alarm. Records showed that Phillips had signed out before the alarm, about a half hour before the other officer eventually did.

Second, Pittman cited Phillips for personal use of the office copier. Another officer had complained to Pittman that Phillips was using the copier for about two hours while he was supposed to be on patrol. Pittman checked the copier's print history, which showed that Phillips had used it to print more than 1,375 pages. Phillips's use of the printer was also recorded on security cameras. Phillips maintained that another supervisor had given him permission to use the copier for personal use, but when Pittman asked other supervisors whether this was true, they denied it.

Pittman sent two memos to the human-resources department regarding Phillips's infractions. After each memo, the base's director of public safety met with Phillips. At both meetings, Phillips told the director that he believed Pittman singled him out because of his race and treated non-black employees more favorably, though he could not give any examples. At the director's recommendation, the base's executive director fired Phillips for reasons outlined in Pittman's memos.

Phillips sued the Secretary of the Navy, alleging that he was fired because of his race and because he complained of discrimination. He presented his claims using the burden-shifting framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), contending that non-black coworkers who had acted similarly were not disciplined, and that the infractions listed in Pittman's memos were pretextual because Phillips's actions complied with common practices on the base. Phillips fingered Pittman as the decisionmaker responsible for his discharge and argued that other supervisors acted as Pittman's "cat's paw."[1]

---

[1] Cat's paw theory is that someone (in this case, Pittman) who wished to retaliate against the plaintiff duped supervisors into taking adverse action against the plaintiff. *See Robinson v. Perales*, 894 F.3d 818, 832 (7th Cir. 2018).

The district court entered summary judgment for the Navy. The judge first concluded that Phillips had failed to establish a prima facie case under *McDonnell Douglas* because none of his proposed comparators was similarly situated—each reported to a different supervisor and engaged in less egregious conduct than Phillips. Even if Phillips had carried his initial burden, the judge added, Phillips failed to provide evidence that Pittman's reasons for disciplining him were pretextual. Phillips appealed.

## II. Discussion

Title VII prohibits workplace discrimination on the basis of race, 42 U.S.C. § 2000e–2(a), as well as employer retaliation against employees who oppose workplace discrimination, 42 U.S.C. § 2000e–3(a). For both types of claims, the ultimate question at the summary-judgment stage is essentially the same: whether the evidence, taken as a whole, would permit a reasonable factfinder to conclude that Phillips's race, or his complaints about discrimination, caused his discharge. *See Abrego v. Wilkie*, 907 F.3d 1004, 1012, 1014 (7th Cir. 2018) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). As in the district court, Phillips invokes on appeal the burden-shifting framework of *McDonnell Douglas*. Because *McDonnell Douglas* remains a useful tool for focusing the evidence in discrimination cases, and because both parties frame their arguments using it, we too address the parties' arguments under this framework. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). And because Phillips relied on the same evidence for both claims, we analyze the claims together.

Under the *McDonnell Douglas* framework, Phillips bears the initial burden to show that: (1) he is a member of a protected class or engaged in protected activity; (2) he was meeting his employer's legitimate expectations; (3) his employer took a materially adverse action against him; and (4) at least one similarly situated employee, who was not in his protected class or who did not engage in protected activity, was treated more favorably. *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017); *Hutt v. AbbVie Prod. LLC*, 757 F.3d 687, 694 (7th Cir. 2014). If Phillips makes this showing, the burden shifts to the Navy to articulate a legitimate, nondiscriminatory reason for the termination, at which point the burden shifts back to Phillips to prove that the Navy's proffered explanation is pretextual. *David*, 846 F.3d at 225.

Phillips contends that the district judge erred in concluding that he failed to identify a similarly situated employee. He points to five non-black officers who, he argues, engaged in similar behavior but were not disciplined. He argues that the judge

applied the wrong standard by focusing on minor differences between him and the other employees, while ignoring similarities.

A similarly situated employee, however, must be directly comparable in all material respects, *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 629 (7th Cir. 2018), and the judge identified several material differences between Phillips and his proposed comparators. From the outset, none reported to Pittman, and employees who were treated more favorably by a different decisionmaker are not similarly situated. *See Moreland v. Nielsen*, 900 F.3d 504, 507–08 (7th Cir. 2018). Phillips argues that Knapp ultimately supervised the whole police department, but this is irrelevant because the *decisionmaker*—not the supervisor—is what matters. *Coleman v. Donahoe*, 667 F.3d 835, 848 (7th Cir. 2012). The parties do not dispute that Knapp simply adopted Pittman's recommendations, and Phillips has consistently argued that Pittman, not Knapp, was the decisionmaker who discriminated against him.

Furthermore, Phillips has not established that any of his proposed comparators engaged in similar conduct. None repeatedly violated policies like he did, and employees without similar disciplinary histories and performance records are generally not similarly situated. *See Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 662 (7th Cir. 2016). To the extent Phillips identifies other employees' misconduct, there are material differences that justify the lack of employer discipline:

**Adrian Rivera**, a Hispanic man, used the copier for personal use and was not disciplined. But none of Rivera's supervisors knew about his copier use, so we cannot infer intentional discrimination from his lack of discipline. *See Lane v. Riverview Hosp.*, 835 F.3d 691, 697 (7th Cir. 2016). At oral argument, Phillips argued for the first time that *he* told Pittman about Rivera's copier use when Pittman questioned him about his own copying. But in the district court, he alleged only that he complained to Pittman that his discipline was unfair because "other officers" had used the copier. There is no evidence that Pittman, or anyone else, knew about Rivera's copier use.

**Robert Schultz**, a white man, was caught waiting in the parking lot for his late-car shift to end instead of finishing his patrol. But unlike Phillips, who punched out early and left the base, Schultz remained on duty. And whereas Phillips failed to respond to a burglar alarm, there is no evidence that Schultz would have been unavailable had an alarm gone off.[2]  Because Phillips and Schultz did not engage in

---

[2] The only information about this incident comes from the proposed findings that Phillips submitted to the district court, which in turn cited Schultz's deposition. Although both parties

conduct of comparable seriousness, their different treatment is not evidence of discrimination. *See Coleman*, 667 F.3d at 850.

**Three non-black officers** missed the same mandatory training as Phillips. Phillips speculates that they were not reprimanded for missing the training, but he provides no evidence to support this assumption—nor evidence that these officers lacked prior approval from a supervisor to miss the training. A plaintiff cannot survive summary judgment by merely asserting that other employees were similarly situated without providing sufficient evidence for the court to conduct a meaningful comparison. *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 369 (7th Cir. 2019).

Even if Phillips could identify a similarly situated employee (and otherwise make out a prima facie case of discrimination), he still would need to provide evidence that the Navy's explanation for his termination was pretextual. *See David*, 846 F.3d at 225. He cannot do so.

To establish that Pittman's enforcement of the written leave policy was pretextual, Phillips relies on evidence that (1) other commanders did not enforce it; and (2) Knapp did not order commanders to enforce it before 2012. But, at most, this evidence shows only that Pittman was out of step with the other watch commanders. Phillips points to no evidence that Pittman applied the policy inconsistently and, as the Navy points out, Pittman also recommended termination for white officers who violated the policy. Even if Pittman was mistaken about how to enforce the policy, that is not evidence of discriminatory intent. Pretext is "more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 698 (7th Cir. 2017) (quoting *Harden v. Marion Cty. Sheriff's Dep't*, 799 F.3d 857, 864 (7th Cir. 2015)) (alteration in original).

Phillips also argues that Pittman's decision to discipline him for leaving early from late-car duty was pretextual because "past practice was that an officer could leave after he saw two other officers dressed and ready to go." But the evidence he cites—his own deposition testimony—does not support this assertion. He testified that officers could wait inside the station for their late-car shifts to end, but only if they remained available to respond to emergency calls. Assuming this was true, Phillips still violated

---

represented to the district court that the deposition was included with the Navy's judgment filings, neither party actually submitted it.

the policy because he left the base early and was unavailable to respond to the burglar alarm.

Phillips's four remaining arguments about pretext warrant only brief mention. First, he argues that Pittman did not tell him that he was required to comply with the written leave policy. But when Phillips was suspended in 2011, Pittman sent him a memo explaining that he had failed to "follow the procedures for requesting leave." Yet he continued to violate the policy. There is no evidence that anyone misled Phillips or, more importantly, lied about why he was being disciplined. *See Burton*, 851 F.3d at 698. Second, Phillips argues that he should not have been marked AWOL for missing training because, he says, doing so did not violate any rules and other officers missed training "all the time." But he provides no evidence in support of these assertions.[3] Third, he argues that when he used the copier for personal use in the past, a different supervisor chose not to discipline him. But this is irrelevant to whether Pittman's reason for enforcing the copier policy—*after* another officer complained—was pretextual. Fourth, Phillips argues that Pittman could not have known whether his use of the copier was work-related. But another officer had reported Phillips for excessive personal use of the copier. No reasonable factfinder could conclude that Pittman did not know that Phillips was printing personal documents.

In sum, Phillips has failed to submit evidence showing that the Navy's explanation for his termination was pretextual. Without any other evidence that the Navy's actions were motivated by race or a desire to retaliate, his Title VII claims for race discrimination and retaliation fail. *See Abrego*, 907 F.3d at 1012, 1014.

### III. Conclusion

Because no reasonable jury could find that Phillips was fired because of his race or as retaliation for opposing race discrimination, we AFFIRM the district judge's entry of summary judgment.

---

[3] Phillips cited depositions of the trainer and Knapp, but he failed to submit them to the district court.