NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 24, 2020[*]
Decided February 26, 2020

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 19-2255

| | |
|---|---|
| DEMETRIUS BLANKENSHIP, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 17-cv-847-jdp |
| AMERICAN PHOENIX, INC. *Defendant-Appellee*. | James D. Peterson, *Chief Judge*. |

## O R D E R

Demetrius Blankenship, an African American man, sued his former employer for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964. During discovery, the district court denied his motion to compel discovery and, a few months later, entered summary judgment for the employer, concluding that Blankenship had not introduced enough evidence to support his allegations. It then denied Blankenship's post-judgment motions to vacate the decision and compel

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

discovery. Blankenship appeals the entry of summary judgment and the denial of his motions to compel. We agree with the district court's reasoning and affirm.

About a year after Blankenship began working for American Phoenix, a rubber manufacturer, he reported to human resources that a coworker had said "hey n****r" and "hey black boy" when Blankenship passed him in the hall. The human resources department obtained statements from Blankenship, the coworker, and two others who were present (a peer and a supervisor). All agreed that the coworker used the n-word but disagreed about whether he directed it toward Blankenship (though Blankenship was the only African American in the vicinity). Regardless, the company issued a warning to the coworker who used the derogatory language, made the warning part of his personnel file, and admonished him that any future incident may subject him to further discipline, including suspension or discharge. The coworker had no more complaints filed against him after the warning.

Four months later, Blankenship's department implemented a change in its punctuality standards. Blankenship attended a training session about the company's employee handbook and the new policy, which would no longer allow workers a "grace period" for tardiness (clocking in even one minute late would count as tardy). Under the company's attendance policy, an employee receives a half-point for unexcused tardiness and one point for an unexcused absence or for leaving work early without permission. The company issues written warnings when an employee has accrued four, five, and six points. At seven points, it imposes a one-day, unpaid suspension. At eight, the employee is fired. Each attendance point expires after 12 months.

More than a year after the company tightened its punctuality standards, in August 2016, Blankenship received his eighth attendance point in a single 12-month period. Among other violations, on ten occasions during that year he had incurred a half-point for being less than five minutes late. American Phoenix issued written warnings to Blankenship when he received his fourth, fifth, and sixth attendance points. The company advised Blankenship that additional warnings would subject him to further disciplinary action including suspension and discharge. When Blankenship received his seventh attendance point, the company suspended him for a day without pay. Three days later, he received his eighth point, and after conducting a termination hearing, American Phoenix fired Blankenship. Among others, the director of human resources (who had received Blankenship's complaint about the racial slur) and the supervisor of Blankenship's department (who had overheard and submitted a report

about the racial slur) were present at the hearing. Blankenship did not contest the accuracy of his total points at any time.

Blankenship sued American Phoenix for race discrimination and retaliation under Title VII, 42 U.S.C. §§ 2000e-2, 2000e-3. As relevant to this appeal, he alleged that the company fired him because he is African American and because he complained about race discrimination. After screening the complaint, the district court provided a scheduling order which included information about how to make discovery requests and file a motion to compel discovery. At one point, Blankenship moved to compel discovery responses, FED. R. CIV. P. 37(a), and American Phoenix answered the outstanding requests three days later. Blankenship argued in a reply brief that the responses were "irrelevant, non-responsive, and totally opposite to the documentation requested." When the court denied the motion to compel, it explained to Blankenship that he could not raise a "vague objection" to the discovery responses in his reply brief and clarified how he could support another motion to compel discovery. Blankenship did not move to compel again or move for sanctions.

Eventually, American Phoenix filed a motion for summary judgment, which the district court granted, concluding that Blankenship offered no evidence that the company's stated reason for firing him—his attendance—was not genuine. Within 28 days, Blankenship filed a "motion to vacate," and another motion to compel discovery. He insisted that he could not offer evidence only because American Phoenix withheld information and the court had wrongly denied his original motion to compel. The court denied both motions, and Blankenship appeals both the entry of summary judgment and the denial of his motions to compel.

To avoid summary judgment on his discrimination claim, Blankenship needed to submit evidence from which a reasonable juror could conclude that American Phoenix fired him because of his race. *Ortiz v. Werner Enter. Inc.*, 834 F.3d 760, 764 (7th Cir. 2016). With respect to retaliation, Blankenship required evidence that his complaints of racial discrimination were the but-for cause of his firing. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013); see *Abrego v. Wilkie*, 907 F.3d 1004, 1014 (7th Cir. 2018). We review de novo. *Abrego,* 907 F.3d at 1011.

Blankenship argues first that the court improperly construed facts in the defendant's favor when it stated that the coworker who used a racial epithet did not direct it at Blankenship. He maintains that the slur was directed at him and that the company's response to it reveals its tolerance for racist behaviors and its general

discriminatory intent. But this question is not material to whether American Phoenix had a discriminatory motive for terminating Blankenship more than a year after the comment. A stray comment might be material in determining unlawful animus, depending on the timing and context of the remark and the identity of the speaker. See *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 885 (7th Cir. 2016). Here, the reprehensible slur was used by a coworker, not anyone who had a role in firing Blankenship. *Id.* Moreover, American Phoenix furnished evidence that, when Blankenship complained, it promptly investigated and then issued a formal disciplinary warning to the coworker, condemning the use of the slur and admonishing that future incidents could result in termination. Therefore, even if we assume that the coworker had directed the slur at Blankenship, the remark does not create a genuine issue of material fact about whether Blankenship was fired because of his race. To the extent that Blankenship implies that the racial slur shows that American Phoenix fostered a hostile work environment, we will not consider arguments not raised before the district court. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 569 (7th Cir. 2017).

Blankenship also contends that American Phoenix's reason for firing him—his attendance—was pretext for discrimination and retaliation. When, as here, an employer presents a non-discriminatory or non-retaliatory reason for the adverse employment action, a plaintiff can still raise a genuine factual dispute with evidence that the proffered reason is a smokescreen for an unlawful motive. *Harden v. Marion Cty. Sheriff's Dep't*, 799 F.3d 857, 863–64 (7th Cir. 2015). American Phoenix came forth with ample evidence that it fired Blankenship under a neutral, department-wide policy of which he was aware and under which he had been warned. Blankenship presents no evidence that this reason is false. In particular, no evidence supports his assertion that the policy was selectively enforced within his department. See *Baker v. Macon Res., Inc.*, 750 F.3d 674, 677 (7th Cir. 2014). Nor does any support his contention that his attendance points were miscalculated. (At his deposition, Blankenship admitted that there was no error in the calculations). In any event, a mistake does not amount to pretext. See *Harden*, 799 F.3d at 864. And, despite Blankenship's suggestion to the contrary, there is no evidence that the company revised the department-wide punctuality standards as a way to trump up a reason to fire Blankenship. In short, Blankenship did not provide any evidence from which a jury could conclude that either his race or his prior complaints of discrimination was the real reason he was fired.

Lastly, Blankenship challenges the district court's denial of his motions to compel discovery because, he says, American Phoenix delayed discovery with phony settlement overtures and then withheld information that prevented him from

presenting evidence at summary judgment. We review for an abuse of discretion and reverse only if the denial caused actual and substantial prejudice. *Gonzalez v. City of Milwaukee*, 791 F.3d 709, 713 (7th Cir. 2015). We see no abuse of discretion here. The court denied the initial motion to compel after American Phoenix responded to the discovery requests that Blankenship had attached to his motion. And, addressing the complaints in Blankenship's reply brief, the court explained that any noncompliance had to be addressed with another motion identifying, among other things, the specific information he required. Despite these instructions, Blankenship did not file another motion to compel during the discovery period nor, after American Phoenix moved for summary judgment, did he ask for additional discovery before responding to the motion. See FED. R. CIV. P. 56(d); *First Nat'l Bank and Tr. Corp. v. Am. Eurocopter Corp.*, 378 F.3d 682, 694 (7th Cir. 2004). Therefore, if Blankenship was prejudiced by any missing discovery, the prejudice resulted from his delay in following up. See *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001). Further, after the district court ruled on the summary judgment motion, it was too late to reopen discovery, so the court appropriately denied the second motion to compel.

Accordingly, the judgment is AFFIRMED.