### NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 19, 2021[*]
Decided May 20, 2021

*Before*

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 20-3462

| | |
|---|---|
| PEARL HENYARD, | Appeal from the United States |
| *Plaintiff-Appellant*, | District Court for the Northern |
| | District of Illinois, Eastern Division. |
| | |
| *v.* | No. 1:15-CV-10835 |
| | |
| MV TRANSPORTATION & PACE, THE | Edmond E. Chang, |
| SUBURBAN BUS DIVISION OF THE | *Judge*. |
| REGIONAL TRANSPORTATION AUTHORITY, | |
| *Defendants-Appellees*. | |

## O R D E R

Pearl Henyard, a former bus driver, sued her former employer for the allegedly harassing acts of a coworker and a manager and for using the bus's security camera to record her private conversations surreptitiously. The district court entered summary judgment for the defendants. It determined that no reasonable jury could conclude that

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

the employer was liable for Henyard's coworker's harassing actions, which ceased as soon as the employer learned about them, or for the manager's actions, which were neither severe nor based on Henyard's sex. Nor could a reasonable jury find that the employer secretly recorded Henyard's private conversations using the bus's camera, which flashes a light when recording. We agree with these conclusions and thus affirm.

We draw the facts from the summary-judgment record and view them in the light most favorable to Henyard. *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 628 (7th Cir. 2018). Henyard began working in early 2014 as a bus driver for MV Transportation, a company that contracts with Pace, the Suburban Division of the Regional Transportation Authority to provide transportation for schools, universities, and corporations around Chicago. Henyard voluntarily resigned from her employment with MV after an accident on the job in August 2015.

Over the two years that Henyard was employed with MV, one of her coworkers behaved in ways that Henyard found offensive. This female coworker called her a "cute chocolate girl," made comments that Henyard "missed" and "liked" her, laughed whenever Henyard was nearby, and once patted Henyard on the rear end with a piece of paper. Henyard complained to her direct supervisor, and afterward she no longer had communication or contact with this coworker.

Henyard also had trouble with one of her managers at MV, Jericho Worthy, describing four interactions with him that she experienced as harassing. First, one time, Worthy had all employees, male and female, sign a document concerning a boy who was hit by a bus; Henyard believed that Worthy fabricated the story, yet she had to sign the document anyway. Second, Worthy once tugged on Henyard's scarf while she was wearing it. Another time, Henyard requested personal time off work and Worthy did not want to give it to her, though he did. Finally, Worthy once delayed approving Henyard's holiday pay, and so Henyard received that money late.

Henyard also believes that MV surreptitiously recorded her while she was driving. Henyard's bus, like all MV buses, had a camera installed that makes short video and audio recordings. The camera is programmed to automatically record a 20-second video whenever there is a collision, and the bus driver can also manually turn on the camera. The camera flashes red and green lights to indicate when it is recording. Henyard often saw the lights on her camera flashing, though there had been no collision and she had not intentionally turned on the device.

After resigning, Henyard sued MV and Pace. (In the joint answer, Pace denied being Henyard's employer, but it never sought judgment on that ground, so we refer to the "defendants" collectively.) The district court twice recruited counsel to represent Henyard, but she rejected each of them and filed an amended complaint pro se. The court dismissed several of her claims—including that the defendants tortured her in violation of federal of criminal law and conspired with a hospital she once attended to inject her with a foreign substance without her consent—and allowed her to proceed on two: that the defendants were liable for the allegedly hostile work environment created by Henyard's coworker and manager, see Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-5, and that the defendants had secretly recorded her while she was on the job, in violation of Illinois's prohibition against eavesdropping, 720 ILCS 5/14-2(a)(1); *id*. at 5/14-6 (establishing civil remedies).

A month after fact discovery closed, and with the summary-judgment deadline due in another month, Henyard moved to reopen discovery so that she could obtain additional documents, including trip logs and inspection reports on the buses she drove. The defendants opposed the motion, explaining that they already told Henyard they objected to her requests and offered to meet and confer, but she refused. The district court denied the motion, concluding that Henyard had offered no explanation for her delay in seeking these documents and thus lacked good cause for an extension.

The district court then entered summary judgment for the defendants. The court explained that, even if the coworker's behavior created a hostile work environment, the defendants could not be liable because the record showed that as soon as MV learned about the offensive behaviors, all interactions between the coworker and Henyard ceased. As for the manager, the court continued, there was no evidence that the allegedly harassing acts were based on Henyard's sex, were severe or pervasive, or resulted in an adverse employment action that would trigger employer liability. Finally, regarding the eavesdropping claim, the court explained that there was no evidence of a secret recording of Henyard's private conversations: Henyard knew when the camera was recording because it would flash colors, and she lacked evidence that even a single private conversation had been captured.

On appeal, Henyard first challenges the entry of summary judgment on her hostile work environment claim. To defeat the defendants' motion, Henyard had to furnish evidence that her work environment was objectively and subjectively offensive, the harassment was based on her sex and was severe or pervasive, and there is a basis for the employer's liability. *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018).

No reasonable jury could conclude that the defendants are liable for the behaviors of the coworker who patted Henyard's rear and made inappropriate comments. As the district court explained, even if those behaviors were severe or pervasive enough to create a hostile work environment (we are skeptical, see, e.g., *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881–82 (7th Cir. 2018)), only an employer that is negligent in discovering or remedying a coworker's harassment can be liable. See *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2441 (2013). The undisputed record shows that Henyard complained to MV about her coworker's behavior, and the behavior stopped. Though it is not evident why the offending behavior ceased, no reasonable jury could conclude that MV was negligent in stopping it once informed.

Nor could a reasonable jury conclude that Worthy, Henyard's manager, created a hostile work environment based on Henyard's sex. Employers are strictly liable for a supervisor's harassing conduct when it results in a tangible employment action (such as firing, reassignment, or a significant change in benefits), see *Vance*, 133 S. Ct. at 2441–42, but Henyard presents no evidence of any. And, although employers can be liable even without a tangible employment action, *id.* at 2442, Henyard cannot establish that Worthy created a hostile work environment. His actions—tugging at her scarf, reluctantly approving her time off, making her (and male employees) sign a document, and causing a delay in her receipt of holiday pay—were infrequent and did not involve the threats, physical contact, or humiliation that show severe or pervasive harassment. See *Swyear*, 911 F.3d 881. Moreover, Henyard speculated, but produced no evidence, that any of these actions was based on her sex. See *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 721 (7th Cir. 2018) (speculation cannot defeat summary judgment).

Henyard also appeals the entry of summary judgment on her eavesdropping claim under Illinois law, but that challenge fares no better. The state statute, 720 ILCS 5/14-2(a)(i), prohibits intentionally and surreptitiously overhearing or recording private conversations without the speaker's consent. See also *id.* 5/14-6 (civil remedies). Though Henyard says she was having "private" conversations on speakerphone on a public bus, the statute protects only communications made "under circumstances reasonably justifying [the] expectation" of privacy. See 720 ILCS 5/14-1. Further, the evidence shows that, even if the camera recorded when Henyard did not turn it on, the recording was not secret; Henyard admits she knew when the camera was activated because it flashed colors. In any case, she lacks evidence that any conversation was, in fact, recorded.

Next, Henyard challenges the district court's dismissal of her retaliation claim on the defendants' motion under Federal Rule of Civil Procedure 12(b)(6). Henyard alleged that sometime soon after she complained about her coworker, a caustic substance flew out of her bus's air vent and into her eye. This claim was properly dismissed. She did not identify anyone responsible for allegedly sabotaging her bus nor allege any basis for her employer's supposed liability; nor did she plausibly suggest a causal link—the timing alone not being one—to her workplace complaint, as she had to do to state a claim of retaliation under Title VII. See *Igasaki v. Illinois Dep't of Fin. & Prof'l. Regul.*, 988 F.3d 948, 959–60 (7th Cir. 2021).

Finally, Henyard challenges the district court's refusal to reopen discovery so that she could obtain driving routes, trip logs, and vehicle inspection reports from the defendants. District courts have broad discretion to manage discovery, and we will reverse only if the denial was an abuse of discretion and it prejudiced Henyard. *Stevo v. Frasor*, 662 F.3d 880, 886 (7th Cir. 2011). Henyard makes no such showing. She tells us that the documents she sought contained "new information," but she does not explain what information she believed they contained that would have supported her claims. Nor does she explain the fault in the district court's reasoning that she could have obtained the information during the discovery period.

We have considered Henyard's other arguments, including those about other claims the district court dismissed on the pleadings, and none has merit.

AFFIRMED